IRA DANIEL TOKAYER
ATTORNEY AT LAW
THE CHRYSLER BUILDING
405 LEXINGTON AVENUE
SEVENTH FLOOR
NEW YORK, NEW YORK 10174

TEL: (212) 695-5250
FAX: (212) 695-5450

August 25, 2010

BY FAX: (718) 613-2527
Hon. Jack B. Weinstein
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re:    Kosher Sports, Inc. v. Queens Ballpark Company, L.L.C.,
           CV-10-2618 (JBW) (ALC)

Hon. Judge Weinstein:

    I am the attorney for Kosher Sports, Inc., the plaintiff in this action. I write: (i) in further support of an Order previously proposed by Kosher Sports on August 20, 2010; and (ii) in response to letters to Your Honor from defense counsel, dated August 20, 2010 and August 23, 2010, and in opposition to the Order proposed by defendant Queens Ballpark Company, L.L.C. ("QBC").

    The Order proposed by Kosher Sports should be signed by the Court because it accurately reflects the Court's ruling in open Court on August 13, 2010. The Court should reject the Order proposed by QBC which would disturb the status quo, eviscerate the ruling issued by the Court and expose Kosher Sports to irreparable harm.

The Order Proposed
By Kosher Sports

    The Order proposed by Kosher Sports is consistent with the Court's oral ruling of August 13, 2010. It extends the TRO issued by the Court on August 6, 2010 and enjoins QBC from interfering with Kosher Sports' sales of KSI Food Products on Fridays and Saturdays in addition to the other days of the week. In contrast, QBC's proposal does violence to the Court's ruling. Without any basis in the record, QBC asks that the injunction be limited and scaled-back to prohibit QBC from interfering with Kosher Sports' Friday and Saturday sales only. While QBC may not yet have actively interfered with QBC's weekday sales, it is not disputed that QBC unilaterally terminated the parties' Agreement and refused to confirm that it would not interfere with Kosher Sports' weekdays sales during the pendency of this action (Katz Dec., Ex. I).

Hon. Jack B. Weinstein
August 25, 2010
Page 2

Indeed, if QBC does not intend to interfere with Kosher Sports' weekday sales as it has claimed (in fact, QBC contends that it does not have the power to interfere with Kosher Sports' sales), then it should have no objection to the substance of the Order proposed by Kosher Sports.

QBC's "objections" to the "findings" contained in the Order proposed by Kosher Sports has no basis in fact or law. Apparently, QBC objects to proposed finding no. 4 that "QBC has prevented Kosher Sports from selling and distributing products on Friday nights and Saturdays, including as set forth in an email from Adam Barrick to Jonathan Katz, dated March 2, 2009." QBC also objects to proposed finding no. 5 that "the harm to Kosher Sports as a result of QBC's conduct is irreparable and not adequately compensable by monetary damages." The proposed findings should be adopted and QBC's objections rejected. The findings are supported by the undisputed evidence and were expressly made by the Court (Tr., at 4 and 8). They serve as crucial bases for the injunctive relief granted by the Court and would be of great interest to any reviewing court.

The Order Proposed By QBC

There are other substantive problems with the QBC's proposed Order in addition to the lack of a prohibition on QBC's interference with Kosher Sports' weekdays sales.

First, the Court did not "find" that the Agreement was an "Advertising Agreement" as set forth in the "whereas" clause of QBC's proposed Order. No such finding was made. While the Court inquired as to whether QBC was an "advertising agency," that matter was disposed of when counsel responded that it was not (Tr., at 2-3). The Court was apparently convinced once Kosher Sports introduced the email from Adam Barrick to Jonathan Katz, dated March 2, 2009, in which QBC, in writing, prohibited Kosher Sports from selling and distributing its products. Such conduct is obviously inconsistent with QBC's claim of the Agreement as an "Advertising Agreement" only.

Indeed, nowhere does the Agreement identify itself as an "Advertising Agreement" and such a claim is belied by the evidence submitted to the Court. Specifically, in Exhibit B to the Katz Dec., Kosher Sports submitted a press release issued by QBC contemporaneously with the execution of the Agreement which described the Agreement as a "Marketing Agreement." (The Court may take judicial notice of the fact that "marketing" is defined as "the act or process of selling and purchasing in a market" and is not limited to "advertising." See Webster's Ninth New Collegiate Dictionary (1987)). In addition, the Sponsorship Activation Plan issued by QBC to Kosher Sports, also included within Exhibit B, makes clear that, first and foremost, the "asset" that Kosher Sports was purchasing from QBC was "the right to sell," not merely to "advertise." Indeed, by virtue of the very first paragraph of the Agreement - drafted by QBC and written on QBC letterhead - QBC granted Kosher Sports "product distribution rights from April 1, 2009 through October 31, 2018." (Katz Dec., Ex. A.)

Hon. Jack B. Weinstein
August 25, 2010
Page 3

      Certainly, there is no basis for the "finding" proposed by QBC that only the Aramark Agreement - and not the QBC Agreement - addresses the days, hours and locations of Kosher Sports' sales. The QBC Agreement does in fact address the times that Kosher Sports may sell products, i.e., "during events at the Ballpark as to which admission is made available to members of the general public," without limitation. Emails between the parties referenced by counsel at the hearing address location as well (Tr., at 11). Nor is there any evidence of any "determination" by Aramark of the kind that the Order proposed by QBC prevents QBC from interfering with. It should be noted that the precise relationship of QBC to Aramark and the interrelationship between the QBC Agreement and the Concessionaire License Agreement was not addressed at the hearing before the Court and will surely be addressed at a later date.

      Accordingly, plaintiff respectfully requests that the Court sign the Order proposed by Kosher Sports. Of course, we are available to discuss this and any other matter with the Court at its convenience.

Very truly yours,

Ira Daniel Tokayer

cc:    Avery S. Mehlman, Esq.

Court Ltr 02.wpd