# HERRICK

NEW YORK

NEWARK

PRINCETON

AVERY S. MEHLMAN
PARTNER
Direct Tel:    212.592.5985
Direct Fax:   212.545.3424

Email:  amehlman@herrick.com

March 17, 2011

Honorable Roanne L. Mann
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *Kosher Sports, Inc. v. Queens Ballpark Company, LLC* (No. 10-cv-2618)

Dear Judge Mann:

As counsel for defendant Queens Ballpark Company, LLC ("QBC") in the above-referenced matter, we write in opposition to Plaintiff Kosher Sports, Inc.'s ("KSI") motion to compel, dated March 7, 2011 (the "Motion"), and cross-move for an order compelling KSI to fully respond to QBC's discovery requests.

The gravamen of KSI's complaint is that it was denied the ability to sell its kosher food products at Citi Field (the "Stadium") on Friday evenings and Saturdays (the "Jewish Sabbath"). When viewed in light of the actual record, it will become clear that this Motion, like KSI's case-in-chief, is baseless, and KSI's pursuit of sanctions is absurd. KSI has been struggling to explain how the ten-year marketing and advertising agreement it entered on January 23, 2008 with QBC (the "Advertising Agreement"), the *only* agreement between the parties, can possibly support its claims. Indeed, Judge Weinstein already determined "by a preponderance of the evidence" that:

> *the Advertising Agreement . . . does not control or address the days and hours when, or locations where, KSI may sell its products at Citi Field.*

(Docket No. 21) (emphasis added).

Rather, those rights are exclusively governed by a separate agreement with non-party concessionaire, Aramark Sports and Entertainment Services, LLC ("Aramark"), to which QBC is not even a party.

Accordingly, it is clear from the record that KSI, and not QBC, broke the terms of the Advertising Agreement by failing to make installment payments to QBC as required under the Agreement.

KSI is similarly clutching at straws with this Motion which, although replete with conclusory allegations, fails to identify any plausible legal or factual basis for the relief it seeks. QBC has fully complied with the scheduling order set by Judge Carter in this matter on

HERRICK, FEINSTEIN LLP
A New York limited
liability partnership
including New York
professional corporations

2 PARK AVENUE, NEW YORK, NY 10016 • TEL 212.592.1400 • FAX 212.592.1500 • www.herrick.com

March 17, 2011
Page 2

November 15, 2010 (the "Scheduling Order"), and has otherwise, in good faith, complied with its discovery obligations, including voluntarily offering to run all of the electronically stored information ("ESI") search terms proposed by KSI, and by producing, to date, over 7500 pages of documents (as compared to the 1000 pages produced by KSI). Nonetheless, KSI, in an end-run around its obligations to confer in good faith, has filed this premature Motion.

Indeed, here, KSI's failure to file the required certification pursuant to Fed. R. Civ. P. 37(a)(1) speaks volumes about the extent — or lack thereof — to which it has attempted to resolve the extant dispute before seeking judicial intervention. Moreover, this Motion is all the more incredulous considering KSI's own discovery deficiencies, including, *inter alia*, its refusal to fully account for its communications with Aramark about whether it can operate on the Jewish Sabbath — an issue that goes to the very heart of the claims at issue in this case.

By Order dated March 9, 2011, Your Honor has now forced KSI to do what it refused to do initially — that is, to meet and confer in good faith with QBC in an effort to resolve or narrow the instant dispute. QBC is confident that most, if not all, of the issues raised with respect to QBC's production — particularly discovery relating to QBC's relationship with third-party concessionaires Aramark, Nathan's Famous Inc. ("Nathan's") and Premio Foods Inc. ("Premio") — can be resolved through an agreed Protective Order, as QBC first proposed to KSI during a telephonic meet and confer on March 3, 2011.

For these reasons and the additional reasons set forth below, KSI's Motion should be denied and QBC respectfully submits that KSI should be compelled to fully respond to QBC's discovery requests.

## I.   KSI'S MOTION TO COMPEL SHOULD BE DENIED

### A.   KSI's Motion is Premature

A motion to compel discovery must be accompanied by "a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). The obligation to confer is not satisfied when the moving party, as KSI has done here, merely makes a conclusory statement that he has fulfilled this requirement. *See U.S. Bancorp Equip. Fin., Inc. v. Babylon Transit, Inc.*, 270 F.R.D. 136, 140 (E.D.N.Y. 2010). To the contrary, as Magistrate Judge Boyle recently noted:

> Confer means to meet, in person or by telephone, and make a genuine effort to resolve the dispute by determining . . . (a) what the requesting party is actually seeking, (b) what the discovering party is reasonably capable of producing that is

March 17, 2011
Page 3

> responsive to the request, and (c) what specific genuine issues,
> if any, cannot be resolved without judicial intervention.

*Id.* (internal citations and quotations omitted). "Under ordinary circumstances . . . the failure to meet and confer mandates denial of a motion to compel." *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, 1998 U.S. Dist. LEXIS 1826 at *8 (S.D.N.Y. Feb. 18, 1998).

On February 8, 2011, KSI wrote to QBC regarding certain alleged deficiencies in QBC's discovery responses. (*See* accompanying Declaration of Avery S. Mehlman, dated March 17, 2011 ("Mehlman Decl.") Ex. 9.) QBC responded by letter on February 15, 2011, that it was continuing to make "every effort to provide a comprehensive production" and that many of the requests and interrogatories identified by KSI were overbroad and not sufficiently narrowly tailored to allow QBC to identify the requested documents. (*Id.* Ex. 10.) QBC also identified several deficiencies in KSI's responses to QBC's discovery requests, and requested a meet and confer in an effort to "resolve this discovery dispute amicably." (*Id.*)

The parties conferred telephonically on March 3, 2011, at which time (as KSI acknowledges in its Motion) QBC informed KSI that documents relating to its relationship with third-party concessionaires Aramark, Nathan's and Premio (i.e., Doc Requests Nos. 7-9, 19, 22 and Interrogatories Nos. 5, 7-9) contained confidential and proprietary business information which could only be produced, with appropriate redactions, under a protective order, and only once appropriate consent had been given by the third-parties. (Mehlman Decl. ¶ 11.)[1] Similarly, as KSI also concedes, QBC agreed to reconsider producing certain sales documents (i.e., Doc Requests Nos. 19-22) which, prior to the meet and confer, it had understood were equally available to KSI. (*Id.*) QBC also informed KSI at this time that it was continuing to review a large volume of documents from the ESI search terms it had run and would continue to produce documents as quickly as possible on a rolling basis. (*Id.*) Rather than confer further with QBC in a good faith effort to resolve or narrow the parties' dispute — or, for that matter, wait until a legitimate dispute had materialized — KSI filed its Motion a mere four days after the parties' initial meet and confer. (*Id.*)

Under these circumstances, KSI cannot reasonably claim that it conferred in "good faith" in an effort to resolve by agreement the discovery disputes it now raises in its Motion. Had it done so, KSI could have, at a minimum, limited the issues presented to the Court. For this reason alone, the Motion is entirely premature and should be denied.

---

[1] KSI's claim that QBC has waived its right to object to the production of confidential material "[b]y failing to object to the request[s] on the grounds of confidentiality" is simply false. (Motion at 4.) QBC's Responses and Objections to KSI's discovery requests include a General Objection (which is *explicitly* incorporated into its response to each of KSI's requests) to the requests "to the extent that they seek documents or information that are confidential, proprietary and/or concern third parties who are not parties to the above-captioned action." ( Mehlman Decl. Exs. 7, 8, ¶ 10.)

March 17, 2011
Page 4

### B. QBC Has Fully Complied With Its Discovery Obligations

KSI's Motion is predicated on mischaracterizations of the record and inaccurate statements regarding QBC's discovery obligations under the Scheduling Order and Federal Rules of Civil Procedure, which KSI's counsel appears not to have consulted before filing this Motion. First, KSI's suggestion that QBC violated its discovery obligations by "refus[ing] to respond to KSI's discovery demands until the Court conducted an Initial Conference" does not pass the red face test. (Motion at 2.) As the attached correspondence, dated September 17, 2010, makes clear, QBC declined to respond to KSI's requests and deposition notices because they were issued *before* the parties had even engaged in a Rule 26(f) conference or had any discussions whatsoever concerning discovery, and therefore were entirely premature and in direct contravention of Fed. R. Civ. P. 26(d)(1) ("A party may *not* seek discovery from any source before the parties have conferred as required by Rule 26(f) . . . .") (emphasis added). (Mehlman Decl. Ex. 3.)

Similarly, KSI's claims that QBC has "refus[ed] to comply" and "willful[ly] disregarded" the Scheduling Order issued by this Court are simply false. (Motion at 1.) The Scheduling Order provides that "[a]ll responses to discovery request(s) [are] due [on] 1/14/11," and there is no dispute here that QBC has filed its responses in a timely fashion. (Docket No. 27.) Apart from providing a May 9, 2011 cutoff for completion of factual discovery, the Scheduling Order is silent as to when the parties are to complete their production of documents. Under the circumstances, and in particular viewed against KSI's limited production, QBC's production of over 7,500 pages of documents is entirely reasonable. This is especially true considering that QBC has voluntarily agreed to run *all* of the ESI search terms requested by KSI. (Mehlman Decl. ¶ 7.) Moreover, as discussed above, to the extent QBC has refused to produce any categories of documents, it has done so based on legitimate concerns regarding privilege and confidentiality which could have been resolved without court intervention had KSI conferred in good faith before filing this Motion.[2]

Finally, KSI offers no support for its conclusory statement that "documents are obviously missing from the production that QBC has made." (Motion at 2.). QBC has taken all required measures to preserve documents in this case, including instituting a litigation hold that was put into effect at the outset of this case. (Mehlman Decl. ¶ 3.)

---

[2] Nor can KSI in good faith complain about the fact that QBC has not yet provided a privilege log considering that it has not provided one either. Pursuant to Your Honor's Order, dated March 9, 2011, both sides exchanged privilege logs on March 16, 2011. (Docket at 34.)

Herrick

March 17, 2011
Page 5

### C. QBC's Opposition to KSI's Requests

While KSI correctly asserts that the scope of discovery is "broad," it is not without limits. Disclosure should not be directed simply to permit a "fishing expedition." *Evans v. Calise*, 1994 U.S. Dist. LEXIS 6187 at *4 (S.D.N.Y. May 11, 1994). The burden is on the moving party " to provide the necessary linkage between the discovery sought and the claims brought and/or defenses asserted in the case." *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, 2009 U.S. Dist. LEXIS 104020 at *7 (E.D.N.Y. Nov. 9, 2009).

Here, KSI fails to meet its burden with respect to many of its discovery requests. As an initial matter, given Judge Weinstein's finding that the Advertising Agreement between KSI and QBC "does not control or address" the time and manner in which KSI sells its kosher products at the Stadium, KSI's requests relating to QBC's performance under the Advertising Agreement (i.e., Requests Nos. 14-15, 17, and 19 -22) are hardly relevant to the subject matter of the lawsuit.

Second, even assuming such requests are relevant, as worded, they are overbroad, burdensome and oppressive. Notwithstanding KSI's claim that the requests are "narrowly tailored," many of the requests suggest just the opposite:

- "Documents sufficient to describe the business of defendant" (Request No. 4);

- "Documents sufficient to describe the relationship between the defendant and the ballpark at Citifield" (Request No. 6);

- "Documents evidencing plaintiff's performance under the Agreement (Request No. 14)"; and

- "Documents evidencing monies received by defendant from plaintiff" (Request No. 15).

If read literally, such requests would require QBC to turn over thousands of documents at considerable expense, almost all of which would be irrelevant to KSI's claims. The same is true with respect to KSI's interrogatories which mirror many of its requests for production.

## II.   KSI SHOULD BE COMPELLED TO FULLY RESPOND TO QBC'S DISCOVERY REQUESTS

KSI's Motion is all the more incredulous considering KSI's refusal to fully respond to QBC's discovery requests. In particular, KSI has outright refused to provide any documents or information in response to the following request propounded by QBC:

HERRICK

March 17, 2011
Page 6

Request No. 8

> Any and all documents concerning or evidencing KSI's ability to operate a Glatt
> Kosher establishment on Friday nights and Saturdays during the Jewish Sabbath.

This request goes to the very heart of the claims and defenses at issue in this case, as KSI
has attempted to excuse its failure to make payments to QBC as required under the Advertising
Agreement on the grounds that QBC has precluded KSI from selling kosher foods on the Jewish
Sabbath. QBC is prejudiced by KSI's refusal to produce any of these documents which, QBC
maintains, will demonstrate that the termination of the Advertising Agreement has not in any
way impacted KSI's rights to sell its products at the Stadium and that those rights are derived
exclusively from a separate agreement with Aramark, to which QBC is not even a party.

Plaintiff has similarly provided incomplete or evasive responses to several of QBC's
Interrogatories.

Interrogatory No. 5:

> Describe chronologically and in detail each fact, agreement,
> occurrence, event, communication, meeting, discussion,
> document and tangible thing concerning KSI's request of
> Aramark Corporation, as whether KSI can operate on Friday
> nights and Saturdays during the Jewish Sabbath, including, but
> not limited to Aramark Corporation's response.

(Mehlman Decl. Ex. 5.) KSI's verified response to this interrogatory was "None." (Mehlman
Decl. Ex. 6.) This response is simply not credible.

Interrogatory No. 7

> Set forth in detail how KSI plans to operate a Glatt Kosher
> establishment on Friday nights and Saturdays during the Jewish
> Sabbath, including who will operate the booths and any
> methods and mechanisms that will be implemented to ensure
> that all Kosher rules and regulations are observed.

As discussed above, despite the obvious relevance of this request to the case at hand,
KSI's only response, beyond interposing generic objections, is that "the same kosher products
will be sold on Friday nights and Saturdays as during the week as per the parties' marketing and
distribution agreement." (Mehlman Decl. Ex. 6.) KSI should be compelled to fully disclose its
communications with Aramark relating to its request to operate a kosher establishment at the
Stadium on the Jewish Sabbath.

Herrick

March 17, 2011
Page 7

### III.   KSI'S REQUESTS FOR SANCTIONS SHOULD BE DENIED

As discussed above, Plaintiff's motion to compel is meritless; accordingly, its motion for sanctions is entirely frivolous and should be denied.  "To impose sanctions upon a party for violating a discovery obligation, the court must find that the party acted with a culpable state of mind." *R.F.M.A.S., Inc. v. So*, 271 F.R.D. 13, 23 (S.D.N.Y. 2010) (internal quotation omitted). Here, as shown above, QBC has fully complied with its discovery obligations under the Scheduling Order and pursuant to the Federal Rules.  Indeed, if any party has violated its discovery obligations in this case, it is KSI, by failing to file a certification in support of its Motion and by circumventing its obligation to confer in good faith before seeking judicial intervention.

Nor is there any basis for KSI's extraordinary request that the Court dismiss, *with prejudice*, QBC's affirmative defenses which are the subject of KSI's interrogatory requests Nos. 11-20.  *See Sanchez v. Litzenberger*, 2011 U.S. Dist. LEXIS 18528 at *10 (S.D.N.Y. Feb. 24, 2011) ("Dismissal is a drastic sanction, which should be imposed sparingly.")   The interrogatories in question sought specific information as to the basis of QBC's affirmative defenses, which QBC objected to as premature on the grounds that discovery had just begun and it had not "received sufficient information to enable it to provide all of the facts or form an opinion regarding its Affirmative Defenses." (Mehlman Decl. Ex. 7.)  KSI offers no explanation and can point to no authority supporting a finding that QBC's responses are deficient, let alone sanctionable and grounds for the extreme remedy of dismissal.  This is hardly surprising considering that in KSI's responses and objections to QBC's interrogatories, it cites the *very same* objections when asked about the basis for its affirmative defenses to QBC's Counterclaims. (Mehlman Decl. Ex. 6, ¶¶ 12-14.) ("Plaintiff objects on the ground that the item calls for a legal conclusion and is premature prior to the completion of discovery.").

Finally, KSI is in no position to demand that QBC pay the costs of this unnecessary Motion. It is KSI—not QBC—that has needlessly and wastefully prolonged this dispute.

* * *

HERRICK

March 17, 2011
Page 8

       For the reasons set forth above, we respectfully request that the Court deny KSI's motion in its entirety and compel KSI to fully respond to QBC's discovery requests.

Respectfully submitted,

Avery S. Mehlman

Enclosure

cc:     Ira Daniel Tokayer, Esq.