# HERRICK

NEW YORK
NEWARK
PRINCETON

AVERY S. MEHLMAN
PARTNER
Direct Tel:   212.592.5985
Direct Fax:  212.545.3424

Email:  amehlman@herrick.com

June 6, 2011

**VIA ECF**
Honorable Roanne L. Mann
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

      Re:    *Kosher Sports Inc. v. Queens Ballpark Company, LLC* (No. 10-cv-2618)

Dear Judge Mann:

    As counsel for defendant Queens Ballpark Company, LLC ("QBC") in the above-referenced matter, we write in further support of our June 2, 2011 application for preclusion and sanctions arising from plaintiff's, Kosher Sports, Inc. ("KSI"), and its counsel's failure to timely disclose covert recordings of conversations between KSI and third-party Aramark Sports and Entertainment Services, LLC ("Aramark") made in January and April 2011.

    A review of the transcript and tapes provided by plaintiff's counsel, for the first time and only pursuant to the Courts' request, on Friday afternoon, expressly and unequivocally demonstrates that the January 6, 2011 conversation between Mr. Katz and Aramark—*which Mr. Tokayer conceded during Friday's telephonic conference he was aware of from the time the recording was made*—discussed KSI's request to operate on Friday nights and Saturdays at Citi Field. Specifically, the informal transcript of the January conversation provided by Mr. Tokayer repeatedly references a "decision" that can only be understood to be a response to KSI's request to operate on Friday nights and Saturdays:

> Mr. Katz: I don' think Aramark really has a decision to make here. It's not really an Aramark decision. It's a Mets decision. Just like anything else. That's the way I look at it.
>
> Mr. Grey: The question is going to be — is we do [sic] their decision and if their decision is nothing, then what happens at that point?

    Accordingly, when this Court questioned KSI's counsel, at the March 29, 2011 discovery hearing, regarding whether there were "discussions about whether KSI could operate" on Friday nights and Saturdays after August 27, 2010, Mr. Tokayer's response that "I don't know that there have been discussions since August 27th" was a deliberate lie, which both the Court and QBC reasonably relied on in concluding that no further communications existed.

HERRICK, FEINSTEIN LLP

A New York limited
liability partnership
including New York
professional corporations

2 PARK AVENUE, NEW YORK, NY 10016 • TEL 212.592.1400 • FAX 212.592.1500 • www.herrick.com

HERRICK

Honorable Roanne L. Mann
June 6, 2011
Page 2

      Additionally, after the second recorded conversation in April, 2011, Mr. Tokayer never supplemented his untruthful response that was given at the March 2011 discovery hearing. Moreover, KSI intentionally delayed its responses to QBC's supplemental demands, responses that were due on May 15, 2011, until after all depositions has been concluded, in order to avoid is discovery obligations.

      For this reason, KSI's suggestion that QBC "sat on its hands" and failed to seek production of the recordings is entirely disingenuous. Moreover, its reliance on the authority established in *Perkins v. Memorial Sloan-Kettering Cancer Center*, 2003 WL 1831246 (S.D.N.Y. 2003), is completely misplaced. Here, unlike in *Perkins*, KSI, both through its discovery responses which assert a "general objection" without specifically incorporating it into its individual responses to QBC's specific requests calling for the production of any audio recordings, and its affirmative misrepresentations to this Court as outlined above, has taken deliberate measures to prevent QBC from discovering the mere existence of such recordings.

      Moreover, the Court in *Perkins* specifically recognized that **"the party who surreptitiously tapes and continues to have access to such tapes has decided advantage over the unaided recollections of the witnesses who have been taped."** For this reason, the court in *Perkins* ordered that the tapes be placed in to a safe deposit box jointly controlled by both parties and their counsel until *after* the conclusion of the relevant depositions and that in the **"interim neither party have in her or its possession no such tapes, or notes or transcripts of such tapes."** Here, by contrast, KSI conducted the depositions with full access to the recordings and transcript—providing it with an unfair and **"*decided advantage*,"** the exact "*advantage*" that the *Perkins* court was seeking to prevent.

      Accordingly, for these reasons and the reasons stated in our letter of June 2, 2011, the Court must preclude KSI from using any of the recordings at the upcoming hearing. If the Court is inclined not to order preclusion, at a minimum, the Court should order KSI to withdraw its motion for contempt until such time as QBC has an opportunity to re-examine all of the affected witnesses. In any event, the Court can not condone such deceitful conduct—intentionally misrepresenting the truth to the Court—and must impose the most severe sanctions available, including an order that KSI and its counsel pay QBC's reasonable expenses, including attorney's fees, incurred as a result of KSI's failure to disclose.

                                        Respectfully submitted,

                                        /s/Avery S. Mehlman

cc:     Ira Daniel Tokayer, Esq.