UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x

KOSHER SPORTS, INC.,                          :          CV-10-2618 (JBW) (RLM)

                              Plaintiff,      :

              - against -                      :

QUEENS BALLPARK COMPANY, LLC,                  :

                              Defendant.       :
-----------------------------------------------------------------x

POST-HEARING MEMORANDUM
IN SUPPORT OF PLAINTIFF'S
<u>MOTION FOR CONTEMPT OF COURT</u>

IRA DANIEL TOKAYER, ESQ. (IT-4734)
Attorney for Plaintiff
405 Lexington Avenue, 7th Floor
New York, New York 10174
(212) 695-5250

**REDACTED VERSION**

TABLE OF CONTENTS

Preliminary Statement. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

The Court's Order. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

KSI's Motion for Contempt. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

THE EVIDENTIARY HEARING. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      Jonathan Katz. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

      Dave Howard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      Mike Landeen. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      Tom Funk. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      Scott Kleckner. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

      Rich Grey. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

      KSI'S MOTION FOR CONTEMPT SHOULD BE GRANTED. . . . . . . . . . . . . . . . . . 10

      A.     The 2011 A-Z Guide and Guest Services Handbook. . . . . . . . . . . . . . . . . . . . . . 11

      B.     QBC and Aramark's Conduct Concerning K428. . . . . . . . . . . . . . . . . . . . . . . . 12

      C.     QBC's Efforts To Have KSI Terminated. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

      D.     QBC's and Aramark's Conduct In Banning KSI
             From Operating on Fridays and Saturdays. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            1.     QBC and Aramark Are Liable For
                  Banning KSI From Operating on Fridays and Saturdays
                  As a Matter of Law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            2.     QBC and Aramark Are Liable For
                  Banning KSI From Operating on Fridays and Saturdays
                  As a Contractual Matter. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

3.      QBC and Aramark Are Liable for Aramark's Conduct
        In Banning KSI From Operating on Fridays and Saturdays
        As a Matter of Fact.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Plaintiff, Kosher Sports, Inc. ("KSI"), submits this Memorandum in the aftermath of the evidentiary hearing conducted on June 28, 2011, pursuant to the Order of this Court, dated April 22, 2011, in connection with KSI's motion, dated April 15, 2011, to hold Queens Ballpark Company, LLC ("QBC") and Aramark Sports and Entertainment Services, LLC ("Aramark") in contempt of court for their violation of the injunction of United States District Judge Jack B. Weinstein issued on August 13, 2010 and memorialized in an Order, dated August 25, 2010.

<u>Preliminary Statement</u>

On August 13, 2010, Judge Weinstein granted KSI's motion for injunctive relief. Upon QBC's representation that it had no role in the sale of KSI's products at Citifield  (Hearing Tr., at 4, 6, 9), the Court broadly ruled that "QBC, its officers, managers, attorneys, employees, successors, assigns, and all other persons acting on its behalf" not "tak[e] any action, directly or indirectly, with respect to, or affecting, the time or method of sale of KSI's products at Citi Field."

On April 15, 2011, KSI moved to hold QBC and Aramark in contempt of Judge Weinstein's Order.   On June 28, 2011, this Court conducted a live evidentiary hearing "to resolve the factual questions raised by plaintiff's motion."  (ECF - 54.)  As the evidence adduced at the contempt hearing made clear, QBC - both independently and in concert with Aramark - circumvented the Order of Judge Weinstein by affecting KSI's operations at Citifield. Specifically, KSI established that:

- QBC revised the 2011 A-Z Guide and published the 2011 Guest Services Handbook to reflect that KSI was barred from operating at Citifield on Fridays and Saturdays (Trial Tr., at 57-59);

- QBC dictated that Aramark deny KSI's request to close location K428 for the Pittsburgh

series in September 2010 (Tr. Ex. 33; Trial Tr., 145, 201-203);

•      QBC sought to terminate KSI's relationship with Citifield altogether; and

•      QBC through Aramark -  as a matter of law, as a contractual matter and as a matter of fact - barred KSI from operating at Citifield on Fridays and Saturdays.

Specifically, with respect to Friday and Saturday operations, the evidence showed that QBC opposed KSI operating on Fridays and Saturdays and influenced Aramark to bar KSI from operating on Fridays and Saturdays.  Indeed, at venues where Aramark is not under QBC's control, Aramark permits KSI to operate on Fridays and Saturdays.  (Trial Tr., 53-54; 179-180; see also Tr. Ex. 43.)

All the above, separately and cumulatively, compel the conclusion that QBC and Aramark took "actions with respect to and affecting the time and method of sale of KSI's products" in violation of the express terms of Judge Weinstein's Order.  As a contempt sanction, this Court should order QBC and Aramark, jointly and severally, to compensate KSI for its damages as a result of the contempt, including reimbursement for:

(1) KSI's lost profits from lost Friday and Saturday sales from April 6, 2011 through the date of trial;

(2) KSI's losses from operating K428 during the Pittsburgh series in September 2010; and

(3) KSI's costs of prosecuting this motion;

among other sanctions.  In addition, QBC and Aramark should be given the opportunity to purge themselves of contempt by permitting KSI to operate on Fridays and Saturdays pending the resolution of this action so that KSI may obtain the full benefit of the injunction issued by Judge Weinstein.

2

<u>The Court's Order</u>

This action, commenced on June 9, 2010, involves KSI's charge, <u>inter alia</u>, that QBC breached an agreement granting KSI a ten (10) year exclusive right to distribute Kosher Food Products ("KFP") at Citifield "during all events at the Ballpark as to which admission is made available to members of the general public," with no limitation on the days of the week during which such right may be exercised.  (Tr. Ex. 4.)

On August 13, 2010, after an evidentiary hearing, United States District Judge Weinstein granted KSI's motion for injunctive relief and enjoined, <u>inter alia</u>, QBC from attempting to prevent KSI from selling KFP on Fridays and Saturdays or "attempt[ing] to influence anybody else to stop them."  (Hearing Tr., at 4-5, 9.)  The Court's ruling was memorialized in a written Order, dated August 25, 2010, in which the Court ordered that:

> QBC, its officers, managers, attorneys, employees, successors, assigns, and all other persons acting on its behalf are enjoined from taking any action, directly or indirectly, with respect to, or affecting, the time or method of sale of KSI's products at Citi Field.  (ECF-21.)

QBC argued during the proceedings before Judge Weinstein that it did not stop KSI from operating on Fridays and Saturdays and had no right to affect KSI's operations.  (Hearing Tr., at 8.)  Judge Weinstein appeared to accept at face-value QBC's representation that QBC had no authority over "when [KSI's] product is sold and how the product is sold and to whom it is sold" (Hearing Tr., at 6, 9).  Accordingly, the Court issued a broad ruling that "QBC, its officers, managers, attorneys, employees, successors, assigns, and all other persons acting on its behalf" not "tak[e] any action, directly or indirectly, with respect to, or affecting, the time or method of sale of KSI's products at Citi Field."  QBC, which failed to appeal Judge Weinstein's Order or

3

seek modification or reconsideration, is bound by the express language of the Order.[1]

On August 27, 2010, KSI gave Aramark notice of Judge Weinstein's Order and advised that "Kosher Sports will commence taking all necessary steps to arrange for the sale of products at Citi Field on Friday nights and Saturdays, times heretofore prohibited by QBC." (Trial Ex. 31.)

KSI's Motion for Contempt

Aramark did not lodge any objection to KSI's August 27, 2010 letter, neither through its representatives nor through its attorneys.  Thereafter, on April 6, 2011, KSI again advised Aramark of its intention to operate on Fridays and Saturdays.  In response, Scott Kleckner of Aramark advised that Aramark would not permit such operations on opening day, Friday, April 8, 2011, and Saturday, April 9, 2011, due to a purported lack of "notice."  (Trial Tr., at 50.)  On April 13, 2011, KSI was advised for the first time by Aramark that it would be barred from operating at all Friday and Saturday events at the Ballpark.  (ECF - 43.)  This ban violated Judge Weinstein's Order enjoining QBC and those acting in concert with it from interfering with KSI's operations.  Thus, on April 15, 2011, KSI moved to hold QBC and Aramark in contempt.  KSI sought "relief in the form of an Order of contempt and a direction that QBC and Aramark purge themselves of such contempt by refraining from further interfering with KSI's distribution and marketing rights."  (ECF - 43.)

KSI's motion clearly sought relief against both QBC and Aramark.  KSI

---

[1]

**REDACTED**

4

"respectfully urge[d] the Court to convene a hearing for the purpose of imposing contempt

sanctions on QBC <u>and its agent Aramark acting on its behalf</u>" (ECF - 43; emphasis supplied).

Aramark was fully aware that KSI's motion was directed at it.  On April 19, 2011, Aramark

responded to KSI's motion as follows:

> We write to this Court pursuant to Local Rule 37.3(c) to
> respectfully oppose Kosher Sports, Inc.'s ("KSI") April 15, 2011
> letter (the "April 15th Letter") requesting an order of contempt
> against Queens Ballpark Company, LLC ("QBC") <u>and</u>
> <u>ARAMARK</u>. . . .  [T]his Court should not find ARAMARK in
> contempt of the preliminary injunction.

(Tr. Ex. 44; emphasis supplied.)  In that letter, Aramark acknowledged that KSI was seeking "to

hold ARAMARK - a non-party to this litigation - in contempt."  (Tr. Ex. 44, at 2.)

In its Memorandum and Order, dated April 22, 2011, this Court acknowledged

KSI's motion reciting that "[p]laintiff seeks contempt sanctions against defendant <u>and against</u>

<u>Aramark</u> on the grounds that <u>both</u> have violated the injunction" (ECF - 54; emphasis supplied).

This Court directed "an evidentiary hearing to resolve the questions raised by plaintiff's motion

for contempt sanctions and by defendant's <u>and Aramark</u>'s responses."  (ECF - 54; e.s.)

<u>THE EVIDENTIARY HEARING</u>

On June 28, 2011, this Court conducted an evidentiary hearing at which KSI

established that QBC and Aramark had deliberately violated Judge Weinstein's injunction.  A

summary of some of the pertinent testimony follows.[2]

---

[2]  Under Fed. R. Civ. P. 32(a)(4), the Court properly denied QBC's request to use as
evidence the depositions of witnesses who were available and did in fact testify in person.  (Trial
Tr., at 11.)

Jonathan Katz

KSI's President, Jonathan Katz ("Katz"), testified that KSI entered into an agreement with QBC, dated January 23, 2008.  (Trial Ex. 4.)  All the terms were negotiated with QBC, even the "Aramark points."  (Trial Tr., at 31-35.)  QBC announced the agreement in August 2008, well before January 2009 when the Concession License Agreement between KSI and Aramark was signed.  (Trial Ex. 6.)[3]

In 2007, Katz had approached Mike Landeen and Greg Stangel of QBC with KSI's desire to operate at Citifield on Fridays and Saturdays.  QBC approved and reached agreement with KSI with respect to such operations.  (Trial Tr., at 39-45.)  Notwithstanding the parties' oral understanding and the express terms of the subsequent written agreement, QBC improperly sought to prohibit KSI from operating on Fridays and Saturdays.  (See Trial Exs. 9, 12 and 19.)  Aramark was never involved in the decision to prevent KSI from operating on Fridays and Saturdays.  (Trial Tr., at 48-49.)  Even as late as April 6, 2011, Aramark advised KSI that it was not saying "no" to Friday and Saturday sales.  (Trial Tr., at 52.)  Indeed, Aramark permits KSI to operate in other venues on Fridays and Saturdays, including Lincoln Financial Field in Philadelphia ("LFF") and M&T Bank Stadium in Baltimore ("MTB").  The only difference between those venues and Citifield is that at those venues KSI has a contract with Aramark only, whereas at Citifield KSI also has an agreement with QBC.  (Trial Tr., at 52-56.)

---

[3]  With respect to subcontractors such as KSI, no agreement can be entered into with Aramark without there first being an agreement with QBC.  (Tr. Exs. 10-11.  See also Trial Tr., at 111-112.)  In fact, Landeen at first denied then admitted that he directed the preparation of the Aramark agreement.  (Trial Tr., at 111-112.)

6

<u>Dave Howard</u>




**REDACTED**




<u>Mike Landeen</u>

Mike Landeen ("Landeen") is QBC's Vice-President of Venue Services. Previously, he was affiliated with Aramark as its Director of Concessions at Shea Stadium. (Trial Tr., at 107-108.)

In no later than March 2010, Landeen embarked on an expletive-laced campaign to terminate KSI, even though KSI was <u>not</u> in default of its QBC or Aramark agreements (Trial Tr., at 124-125). On March 18, 2010, Landeen explicitly directed Adam Barrick of the Mets to "throw [KSI] out" of Citifield. (Tr. Ex. 14.)   At that time, Barrick was already reviewing KSI's agreement with Aramark and legal action was being contemplated. (Trial Tr., 126-129; Tr. Exs. 13, 15.) In April 2010, QBC commenced taking steps to "get rid" of KSI and replace it with another kosher vendor. (Tr. Ex. 17.) By May 2010, it was "clear" to QBC that the relationship with KSI had to end. (Tr. Ex. 20.)

7

Landeen admitted that he was "not comfortable letting Aramark" permit KSI to operate on Fridays and Saturdays. (Trial Tr., at 138-139.) While he understood that Judge Weinstein's injunction "prohibited QBC from interfering with Kosher Sports' operations in any way or persuading Aramark in any way" (Trial Tr., at 139), on the very day of Judge Weinstein's ruling, Landeen - the former Aramark employee - directed Aramark to keep KSI's operations at Citifield "status quo." The "status quo" at that time - which had been unilaterally imposed by QBC since Citifield's inaugural season of 2009 - was that QBC, in violation of KSI's contractual rights, had banned KSI from operating on Fridays and Saturdays. (Trial Tr., at 139-142.)

Despite the injunction and unbeknownst to KSI, Landeen continued to press Aramark to terminate KSI. (Trial Tr., 145-146; 152.) While Landeen flatly and repeatedly denied discussing terminating KSI (Trial Tr., at 145; 152; 155-156), his testimony was belied by documentary evidence and the testimony of Tom Funk and Scott Kleckner of Aramark.

Tom Funk

Tom Funk ("Funk") worked for Aramark at LFF along with Scott Kleckner. He confirmed that Aramark requested that KSI operate at LFF on Fridays and Saturdays. (Trial Tr., at 180.) When Funk relocated to Citifield in the Spring of 2009, he became aware of the Mets' opposition to such operations. (Trial Tr., at 181.) Neither Funk nor any Aramark representative, however, took any steps concerning KSI's weekend operations. (Trial Tr., at 184.) In fact, on May 18, 2010, when Funk heard that KSI was intending to operate on Fridays and Saturdays, his only reaction was to ask "who approved this on the Mets side." (Tr. Ex. 18; Trial Tr., at 185.) Funk disagreed with the claim made by QBC before Judge Weinstein that it was Aramark - not QBC - which had banned KSI from operating. Upon learning of the position QBC had taken,

8

Funk - and his boss, Clint Westbrook - commented on QBC's efforts to "throw Aramark under the bus." (Trial Tr., at 194-195.)

Funk testified that QBC sought to replace KSI. (Trial Tr., at 198.) To that end, at QBC's request, Funk met with QBC and various replacement vendors. (Trial Tr., at 198.) The meetings continued through at least September 2010, despite Judge Weinstein's Order. (Trial Tr., at 199.) During the weekly meetings between Aramark and QBC - including November 2, 2010, November 11, 2010 and December 7, 2010 - QBC specifically discussed terminating KSI. (Trial Tr., at 200-201.)

Scott Kleckner

Scott Kleckner ("Kleckner") became Aramark's Resident District Manager at Citifield in January 2010. In that position, he communicates with Funk many times a day and regularly speaks with Landeen. (Trial Tr., at 207-208.) Nevertheless, when Kleckner started at Citifield, he was not advised of KSI's interest in operating on Fridays and Saturdays. (Trial Tr., at 211.) Kleckner eventually learned of QBC's opposition to KSI operating on Fridays and Saturdays. (Trial Tr., at 213-214.) Kleckner confirmed Funk's testimony and controverted the testimony of Landeen when he testified that, after Judge Weinstein's Order, QBC had, in fact, sought to terminate KSI and replace it with another kosher vendor. (Trial Tr., at 218, 222-225.)[4]

Rich Grey

Katz testified that, in January 2011, Rich Grey ("Grey") of Aramark told him that

_____

[4] Kleckner did not deny telling Katz that the Mets would "defend" their attempt to terminate KSI by claiming that they were just "pursuing other options," precisely the "contingency plan" Landeen pressed upon this Court, but that really "to cut [through] the bullshit, they were looking to terminate him." (Trial Tr., at 247.)

"it was important for the Mets to give Aramark their decision [with respect to KSI's Friday and Saturday operations] and give it to them very quickly." (Trial Tr., at 50.)  Thus, the decision to bar KSI from operating on Fridays and Saturdays, although it was to come from Aramark, was obviously <u>QBC</u>'s decision to make.  QBC's control over the decision concerning KSI's operations was also established by Grey when he agreed that "the Mets were not going to let this happen, meaning Friday and Saturday sales." (Trial Tr., at 260.)  Any testimony otherwise would not be credible as established by the voice recording of the meeting between Grey and Katz. (Trial Tr., at 258-260.)[5]

## ARGUMENT

### <u>KSI'S MOTION FOR CONTEMPT SHOULD BE GRANTED</u>

"An injunction is a powerful and generally effective remedy.  This is due in large measure to the court's power to punish disobedience by civil contempt, which is remedial in nature and designed both to coerce obedience and to compensate the complainant for losses sustained, and by criminal contempt whose purpose is to vindicate the court's authority and dignity." 13 Moore's Federal Practice, § 65.80 (2011).  Once a violation of the court's injunction is established, the court must determine what sanctions are necessary to ensure compliance.  <u>Id</u>. "Since the plaintiff should be made whole for the harm he has suffered, it is appropriate for the court also to award the reasonable costs of prosecuting the contempt, including attorney's fees, if

---

[5]                                    **REDACTED**

the violation of the decree is found to have been willful." Vuitton et Fils S. A. v. Carousel

Handbags, 592 F.2d 126, 130 (2d Cir. 1979).  Under Fed. R. Civ. P. 65(d), "a non-party with

actual notice of an injunction may be held in contempt if he or she aids or abets a named party in

a concerted violation of the injunction." 13 Moore's Federal Practice, § 65.80 (2011).  Here, the

evidence established that QBC - and its partner Aramark which was advised of the injunction and

given notice of KSI's motion to hold it in contempt - violated Judge Weinstein's injunction.

A.      The A-Z Guide and Guest Services Handbook

                It is undisputed that QBC revised the A-Z Guide for the 2011 season which,

contrary to the 2010 version, reflected for the first time that KSI would henceforth not be

permitted to operate on Fridays and Saturdays.  QBC also published the 2011 Guest Services

Handbook which reflected that KSI would not be allowed to open on Fridays and Saturdays.

(Trial Tr., at 57-59; Tr. Exs. 45, 46).  The revision of the Guide and the publication of the

Handbook constitute "actions, directly or indirectly, with respect to, or affecting, the time or

method of sale of KSI's products at Citi Field" in violation of Judge Weinstein's Order.

                QBC's defense that the Mets were only "inform[ing] the public . . . that on Fridays

and Saturdays these concessions run by Mr. Katz, Kosher Sports was not operating" (Trial Tr., at

299) is disingenuous.  In previous years, QBC did not see the need to expressly advise the public

of any such limitation on the hours of KSI's operations and QBC introduced no explanation for

why, given Judge Weinstein's Order, the Guide suddenly had to be revised from previous years.

In addition, QBC's purported defense relies on an inaccurate chronology of events.  QBC's

revision of the Guide and publication of the Handbook occurred before the 2011 season and prior

to Aramark advising KSI that it would not be allowed to operate on Fridays and Saturdays.

Indeed, the implication of counsel's claim is that, at the time of these actions, QBC was

confident in the knowledge that KSI would be banned from operating on Fridays and Saturdays

during the upcoming season.  This confidence demonstrates QBC's control with respect to the

ultimate decision.  Certainly, it indicates complicity in the decision if it was indeed to be made by

Aramark, a point which KSI not only hotly contests, but which is contrary to the evidence.  See

Point D(3), infra.

      In all events, it is clear that the revision of the Guide and the publication of the

Handbook took place after Judge Weinstein's Order and in violation thereof.

B.    QBC and Aramark's Conduct Concerning K428

      The uncontroverted documentary evidence and the undisputed testimony of Funk

and Landeen (Trial Tr., at 144-145) establish that, unbeknownst to KSI, it was QBC which

directed that KSI be required to operate at location K428 for the Pittsburgh series in September

2010.  This direction clearly falls within the prohibition of Judge Weinstein's Order which

enjoined QBC "from taking any action, directly or indirectly, with respect to, or affecting, the

time or method of sale of KSI's products at Citi Field."

      QBC's counsel's contention that Judge Weinstein's Order should not be enforced

as written is as shocking as it is disingenuous.  The Order is unambiguous and must be enforced -

not as counsel believes Judge Weinstein may have "envisioned" it (Trial Tr., at 310) - but as

explicitly worded.  Moreover, the Order, if broadly worded, was the direct consequence of

QBC's claim that it had no control over KSI's operations.  Specifically, in response to QBC's

claim "that the responsibility and the individual sole corporation that authorizes whether [KSI]

can sell the product [is] Aramark and not the New York Mets," the Court remarked: "then you

12

are not harmed by the injunction."  (Hearing Tr., at 9.)  Thus, QBC was hoisted by its own

petard.  Based upon QBC's claim, the Court directed that QBC not take "any action, directly or

indirectly, with respect to, or affecting" KSI's operations.  The time to object to the breadth of

the Order was <u>before</u> QBC wilfully violated it, <u>not after the evidentiary hearing to hold QBC in</u>

<u>contempt</u>.  QBC - which did not appeal or seek to narrow or otherwise modify the Order - is

bound by the Order and its clear terms.  In wilfully disregarding the Order, QBC acted in

contempt of court.

C.    <u>QBC's Efforts To Have KSI Terminated</u>

           QBC's efforts during the off-season to terminate KSI, as established by all the

credible evidence, were a blatant attempt to "affect the hours and method of" KSI's operations

and a violation of the Order of the Court.  Landeen's repeated attempts to deny that QBC

discussed terminating KSI (Trial Tr., at 145; 152; 155-156) is belied by the testimony of both

Funk and Kleckner and the clear import of the Minutes of the weekly QBC-Aramark meetings.

Landeen's characterization of QBC's efforts as "contingency planning" is an inexcusable attempt

to mislead this Court.  KSI never sought to terminate its relationship with QBC.  To the contrary,

the record is replete with evidence of KSI's efforts to continue at Citifield in the face of QBC's

efforts, going back to March 2010, to have KSI terminated, including KSI's motion for injunctive

relief.  Landeen was forced to admit that he did not have any personal knowledge of any KSI

threats to leave Citifield (Trial Tr., at 151).  His claim that QBC's Pete Helfer was the source of

his knowledge in this regard (Trial Tr., at 159) is clearly fabricated.  The documentary evidence

demonstrates that Helfer was seeking to "get rid" of KSI; there is no evidence that Helfer was

concerned that KSI would leave Citifield.  (Tr. Ex. 17.)[6]

D.      QBC's and Aramark's Conduct In Banning KSI
        From Operating on Fridays and Saturdays

        Aramark's advice in April 2011 that KSI would be barred from operating at

Citifield on Fridays and Saturdays constitutes a violation of Judge Weinstein's Order not only by

Aramark, but also by QBC - as a matter of law, as a contractual matter and as a matter of fact, as

demonstrated below.

        1.      QBC and Aramark Are Liable For
                Banning KSI From Operating on Fridays and Saturdays
                As a Matter of Law

        Aramark's conduct in banning KSI from operating at Citifield on Fridays and

Saturdays is attributable to QBC as a matter of law under agency principles applicable to

partnerships and joint ventures, as demonstrated below.

         Under New York law, "when determining whether a partnership (or a joint

venture) exists, the factors to be considered are the intent of the parties (express or implied),

whether there was joint control and management of the business, whether there was a sharing of

the profits as well as a sharing of the losses, and whether there was a combination of property,

skill, or knowledge."  Boyarsky v. Froccaro, 131 A.D.2d 710, 516 N.Y.S.2d 775, 776-77 (2d

Dept. 1987).  Accord Dundes v. Fuersich, 6 Misc.3d 882, 791 N.Y.S.2d 893 (Sup. Ct. N.Y. Co.

2004).  It has been stated that:

-----

[6]                                             **REDACTED**

14

> A joint venture is a special combination of two or more persons where in some specific venture a profit is jointly sought. It is in a sense a partnership for a limited purpose, and it has long been recognized that the legal consequences of a joint venture are equivalent to those of a partnership.

Gramercy Equities Corp. v. Dumont, 72 N.Y.2d 560, 565, 534 N.Y.S.2d 908 (1988). See also

15A N.Y.Jur 2d, Business Relationships § 1537 (2009). The court has held that:

> Under New York law, a joint venture is formed when (a) two or more persons enter into an agreement to carry on a venture for profit; (b) the agreement evinces their intent to be joint venturers; (c) each contributes property, financing, skill, knowledge, or effort; (d) each has some degree of joint control over the venture; and (e) provision is made for the sharing of both profits and losses.

SCS Communications, Inc. v. Herrick Co., 360 F.3d 329, 341 (2d Cir. 2004). The very nature of a partnership and/or a joint venture is based on the law of principal and agent. "Just as a principal is liable for the acts of its agents, each partner is personally responsible for the acts of other partners in the ordinary course of the partnership's business." Ederer v. Gursky, 9 N.Y.3d 514, 522, 851 N.Y.S.2d 108 (2007). See also Polycast Technology Corp. v. Uniroyal Inc., 728 F. Supp. 926, 935 (S.D.N.Y. 1989) ("partnership liability is rooted in agency principles; it requires no actual participation in or knowledge of the acts performed by the partners to impose liability); 15A N.Y.Jur 2d, Business Relationships § 1662 (2009), citing N.Y. Partn. L., § 4(3).

**REDACTED**

15

**REDACTED**

Accordingly, Aramark's conduct in banning KSI from operating on Fridays and Saturdays is attributable as a matter of law to QBC, even if Aramark's action was not directly influenced by QBC.  Of course, as demonstrated in Point D(3), <u>infra</u>, the evidence establishes that Aramark was in fact acting under QBC's influence and at its behest when it advised that KSI would not be permitted to operate on Fridays and Saturdays at Citifield.

  2.  QBC and Aramark Are Liable For
     Banning KSI From Operating on Fridays and Saturdays
     <u>As a Contractual Matter</u>

**REDACTED**

16

**REDACTED**

**REDACTED**

Accordingly, the decision to bar KSI from operating at Citifield on Fridays and Saturdays, even assuming <u>arguendo</u> it was made independently by Aramark, was an "action with respect to or affecting the time or method of sale of KSI's products at Citi Field" made by or "on behalf of" QBC in violation of Judge Weinstein's Order.

 3. QBC and Aramark Are Liable for Aramark's Conduct
   In Banning KSI From Operating on Fridays and Saturdays
   <u>As a Matter of Fact</u>

The evidence at the hearing demonstrated that Aramark was acting under QBC's influence and at its behest when Aramark advised that KSI would not be permitted to operate on Fridays and Saturdays at Citifield.  This is hardly surprising since QBC has regularly sought to attribute its actions with respect to KSI to Aramark.  Specifically:

• Although it was Aramark which responded to KSI's request to close K428 for the Pittsburgh series in September 2010, it was <u>QBC</u> which dictated Aramark's response and demanded that QBC's cart remain open, to KSI's detriment (Trial Tr., at 203).

• At the injunction hearing, Judge Weinstein found that, contrary to QBC's claim, it was not Aramark which prevented KSI from operating on Fridays and Saturdays, but in fact it was <u>QBC</u> that made the decision to bar KSI from operating.  Indeed, Aramark objected to QBC's attempt to "throw [Aramark] under the bus" (Trial Tr., at 194-195), or, in other words, blame Aramark for QBC's conduct.

At the contempt hearing, QBC again attempted to "throw Aramark under the bus." The evidence established that QBC did not want KSI to operate on Fridays and Saturdays and, well before Kleckner arrived at Citifield, it was QBC that repeatedly and unilaterally acted to

prevent KSI from operating.  When, on account of Judge Weinstein's Order, QBC needed

Aramark to do its "dirty work," Aramark - undisputedly aware of QBC's position and duty-

bound to take it into account (Tr. Ex. 3) - implemented QBC's wishes.  This Court - like Judge

Weinstein before it - should reject QBC's attempt to attribute its conduct to Aramark.[7]

   Direct evidence of QBC's influence was provided by QBC's Landeen, formerly of

Aramark.  He stated that he was "not comfortable letting Aramark" permit KSI to operate on

Fridays and Saturdays (Trial Tr., at 138-139) and admitted that, immediately after Judge

Weinstein's injunction, he directed his former colleagues to maintain the "status quo" under

which KSI was not permitted to operate on Fridays and Saturdays (Trial Tr., at 139-142).

Additional irrefutable evidence of QBC's influence is the fact that, at venues where QBC is <u>not</u>

involved, Aramark allows KSI to operate on Fridays and Saturdays.

   Kleckner's contention that Citifield is somehow different from other venues,

including LFF where, under his charge, KSI was allowed to operate on weekends (Trial Tr., at

234-235), is pure conjecture, lacking any credible basis.  There is no factual basis to draw a

distinction between "observant" Jews in New York and those in Philadelphia.  Nor is there any

credible explanation as to why the "sensitivity" of such persons would not be allayed by the

rabbinic approval KSI obtained at the direction of QBC.  Rather, it appears that Kleckner, at the

eleventh-hour, was prodded by this Court into a post hoc distinction with no credible basis and

no documentary support.  Moreover, Kleckner said he did not recall allowing KSI to operate at

---

  [7]  The hearing supplied evidence of "motive" and opportunity" for QBC's influence over
Aramark.  (Trial Tr., at 281-282.)  In addition, Kleckner supplied a financial motive when he
claimed that QBC would make more money if Aramark - not KSI - operated KSI's locations on
Fridays and Saturdays.  (Trial Tr., at 255.)

LFF, which is at odds with the express testimony of Katz and also Funk who worked with Kleckner at LFF and now works with him at Citifield.  Indeed, the only compelling explanation for the different positions taken by Kleckner is that, at LFF, the decision was Kleckner's alone, whereas, at Citifield, Kleckner was duty-bound to take into account and implement the decision of QBC.

Indeed, it is obvious that the "integrity" issue advanced by Kleckner was not an independent concern of Aramark's but merely a parroting of QBC's position (see Tr. Ex. 9). Kleckner admitted that his boss, Scott Wiegert, did not have any such concern (Trial Tr., at 231) and Kleckner failed to offer any evidence as to how, when and why he came to it.  Obviously, Kleckner had no such concern prior to coming to Citifield.  At LFF, Kleckner allowed KSI to operate on Fridays and Saturdays.  Further evidence that the "integrity" concern did not originate with Kleckner is:

- The failure of Kleckner (and Funk, Aramark's attorneys or anyone else with whom Kleckner shared the letter) to raise it in response to KSI's August 27, 2010 letter enclosing Judge Weinstein's Order and advising that KSI intended to operate on Fridays and Saturdays;

- Kleckner's failure to raise it when, in response to KSI's advice on April 6, 2011 that KSI intended to operate on Fridays and Saturdays, Kleckner said that he "was not saying no" to Friday and Saturday operations; and

- Kleckner's failure to raise it in response to KSI's counsel's April 7, 2011 letter reiterating that KSI "fully intends to exercise its right to have KSI Food Products sold at Citi Field this Friday and Saturday and at every Friday and Saturday event for the duration of KSI's

20

10-year contract with Aramark and QBC" (Tr. Ex. 41).

Indeed, even in Aramark's April 19, 2011 submission to this Court in opposition to KSI's motion

for contempt, Aramark - while citing "economics" and "perceived patron demand" - failed to

reference Kleckner's "integrity" issue. (Tr. Ex. 44.)

In all events, the Court may not rely solely on the testimony of Kleckner to find

that Aramark acted independently, as QBC urges. His testimony was self-serving, self-

interested, uncorroborated by even a shred of documentary evidence and discredited as set forth

above. In addition, Kleckner was impeached as a witness by irrefutable documentary evidence.

Specifically, at the hearing:

- Kleckner denied telling Katz that "during the off season, despite the Judge's ruling, the

  Mets had asked [him] to try to find a vendor to replace Kosher Sports so they could tell

  John Katz to pound the sand" (Trial Tr., at 219);

- Although Kleckner assured Katz that he would repeat what he said "verbatim" and

  "would not perjure himself" (Trial Tr., at 226), Kleckner nevertheless sought to disavow

  his obviously unrehearsed and truthful April 6, 2011 statement that he "had been pretty

  open with Mr. Katz off the record about QBC [requesting] Aramark to terminate Kosher

  Sports' relationship and bring in somebody else" (Trial Tr., at 225); and

- Kleckner denied telling Katz on April 6, 2011, that, while he would not permit KSI to

  operate at the upcoming Friday and Saturday events, he was <u>not</u> saying "no" to future

  Friday and Saturday events (Trial Tr., at 241-242).

The voice recordings played in open Court demonstrated that Kleckner was less than candid

about these matters at the hearing. His failure to testify truthfully renders his entire testimony not

credible and certainly not worthy of being the sole basis for a finding, contrary to all the credible evidence, that Aramark was not influenced by QBC.

Thus, all the credible evidence establishes that QBC was in fact the driving force behind Aramark's conduct in banning KSI from operating on Fridays and Saturdays at Citifield. Because Aramark was influenced by, and acted at the behest of QBC, both QBC and Aramark should be found to have wilfully disobeyed Judge Weinstein's Order in contempt of this Court.

<u>Conclusion</u>

WHEREFORE, plaintiff respectfully requests that its motion to hold QBC and Aramark, jointly and severally, in contempt of court should be granted in its entirety. The Court should grant KSI such relief as to this Court may seem just and proper, including reimbursement for: (i) KSI's lost profits from lost Friday and Saturday sales from April 6, 2011, through the date of trial; (ii) KSI's losses suffered from the operation of K428 during the Pittsburgh series in September 2010; and (iii) KSI's costs of prosecuting this contempt motion, among other sanctions. In addition, QBC and Aramark should be allowed to purge themselves of contempt by permitting KSI to operate at Citifield on Fridays and Saturdays, as per Judge Weinstein's Order, pending the resolution of this action.

Dated: New York, New York
          July 11, 2011

_____/s/_____
IRA DANIEL TOKAYER, ESQ. (IT-4734)
Attorney for Plaintiff
405 Lexington Avenue, 7th Floor
New York, New York 10174
(212) 695-5250

CONTEMPT HEARING - POST TRIAL MEMORANDUM A - REDACTED.wpd