UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KOSHER SPORTS, INC.,

                    Plaintiff,    :  CASE NO.: CV-10-2618 (JBW)(RLM)

    -against-

QUEENS BALLPARK COMPANY, LLC,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEFENDANT QUEENS BALLPARK COMPANY, LLC'S RESPONSE
TO PLAINTIFF'S OBJECTIONS TO THE
<u>AUGUST 26, 2011 REPORT AND RECOMMENDATION</u>**

Avery S. Mehlman, Esq.
Jonathan L. Adler, Esq.
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
(212) 592-1400 (Phone)

*Attorneys for Defendant Queens
Ballpark Company, LLC*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

RELEVANT BACKGROUND ............................................................................................... 3

ARGUMENT ............................................................................................................................ 4

I. LEGAL STANDARDS ............................................................................................... 4

    A. The District Court May Only Reconsider the Magistrate's Report Under a Clearly Erroneous or Contrary to Law Standard ........................................... 4

    B. Standard for Civil Contempt ........................................................................... 5

II. THE MAGISTRATE'S REPORT WAS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW IN DENYING KSI'S MOTION FOR CONTEMPT ............. 5

    A. QBC's Publication of KSI's Days of Operation Did Not Violate the Order ........ 6

    B. QBC Did Not Violate the Order by Insisting That KSI Operate One Of Its Food Carts ............................................................................................................. 7

    C. QBC's Post-Injunction Discussions With Aramark Did Not Violate the Order ........ 8

III. THE MAGISTRATE'S REPORT WAS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW IN FINDING THERE IS NO BASIS FOR ATTRIBUTING ARAMARK'S CONDUCT TO QBC ............................................... 10

    A. Aramark Reached Its Own Conclusions Regarding KSI's Friday and Saturday Operations ......................................................................................... 10

    B. Aramark Is Not a Joint Venturer with QBC or an Agent of QBC ...................... 12

    C. QBC Is Not Liable for Aramark's Conduct Pursuant to Their Contractual Relationship ......................................................................................................... 14

CONCLUSION ......................................................................................................................... 15

# TABLE OF AUTHORITIES

Page

**FEDERAL CASES**

*Field Day, LLC, No. 04-2202,* 2010 U.S. Dist. LEXIS 137410 (E.D.N.Y. Dec. 30, 2010) ................................................................................................................................. 4

*Intel Containers International Crop. v. Atlantrtrafik Exp. Serv. Ltd.,* 909 F.2d 698 (2d Cir. 1990) .................................................................................................................. 13

*Latino Officers Association of New York, Inc. v. City of New York,* 558 F.3d 159 (2d Cir. 2009) .................................................................................................................... 5

*Kosower v. Gutowitz,* 00 Civ. 9011 (JGK), 2001 WL 1488440 (S.D.N.Y. Nov. 21, 2001) ............................................................................................................................. 13

**FEDERAL STATUTES**

28 U.S.C. § 636(b)(1)(A) ............................................................................................................. 4

Defendant Queens Ballpark Company, LLC ("QBC") respectfully submits this response to Plaintiff Kosher Sports, Inc.'s ("KSI" or "Plaintiff") objections to the Report and Recommendation issued by Magistrate Judge Mann on August 26, 2011 (the "Report").

## PRELIMINARY STATEMENT

The injunction issued by this Court on August 25, 2010 enjoining QBC from "taking any action, directly or indirectly, with respect to, or affecting the time or method of sales of Kosher Sports products at Citi Field" was clearly intended to preserve the "status quo" during the pendency of this litigation. Indeed, during the August 13, 2010 motion hearing, this Court expressly rejected KSI's request to fashion an injunction requiring that it be allowed to operate on Friday and Saturdays, stating that "[t]he only injunction you are entitled to is that [QBC] may not order you not to sell or attempt to influence anybody else not to sell during the pendency of the injunction."

Now, more than a year later, KSI is still operating at Citi Field on Sundays through Thursdays—in precisely the same time and method in which it operated before filing this suit and, indeed, since Citi Field first opened in 2009. Nevertheless, while the facts on the ground have remained the same since the Court first issued its injunctive order, KSI has taken this case to new heights of ingenuity and new lows of absurdity in its efforts to refashion this Court's injunctive order and to manufacture a contempt violation against QBC and Aramark.

For example, KSI seeks to hold Aramark Sports Entertainment Services, LLC ("Aramark") in contempt, even though Aramark is not a party to this litigation, did not participate in the motion or evidentiary hearings, and is not covered by this Court's injunctive order. Even more absurd, KSI seeks to hold QBC in contempt on the basis of the independent

1

actions of non-party Aramark in refusing to permit KSI to operate on Friday and Saturdays.

Following a lengthy evidentiary hearing and post-trial submissions, Magistrate Judge Mann issued a report recommending that KSI's motion be denied in its entirety, finding that plaintiff did not sustain its burden of establishing by "clear and convincing evidence" that QBC or Aramark violated this Court' order. In rejecting the myriad of theories advanced by KSI for holding both QBC and Aramark in contempt, the Magistrate found it significant that:

- "No witness testified that any QBC employee asked Aramark to terminate plaintiff or limit plaintiff's sales at any point after the issuance of the injunction" (Report (D.E. # 90) at 19);

- "The record suggests that Aramark independently decided to prevent plaintiff from selling on Fridays and Saturdays" (*Id.* at 13);

- "[T]he terms of the preliminary injunction show that the order was not intended to apply to Aramark's conduct" and that "[t]hose terms could not, in fairness, be applied to Aramark, as they would render meaningless Aramark's contract with Plaintiff" (*Id.* at 30);

- There is "no factual or legal basis on which to attribute to defendant Aramark's decision to bar plaintiff from operating on Fridays and Saturdays." (*Id.* at 39.);

- "Aramark is not 'legally identified' with defendant, the party named in the preliminary injunction, and . . . that order was drafted to exclude Aramark's independent actions." (*Id.* at 30.); and

- "The evidence does not support a finding that defendant and Aramark operated the Citi Field concessions as a joint venture, and the preliminary injunction cannot be extended to Aramark's conduct on the basis of such a theory." (*Id.* at 35.)

KSI has proffered no factual or legal basis for rejecting the Magistrate Judge's report and recommendation under any standard, let alone the "clearly erroneous" and "contrary to law" standard that must be applied here. The Magistrate did not countenance KSI's refashioning of

the injunctive order to conform to its theories of contempt, and this Court should not either. Accordingly, the Magistrate's Report should be adopted in its entirety.

## RELEVANT BACKGROUND

On or about January 31, 2008, KSI entered into a multi-year advertising agreement with QBC (the "Advertising Agreement") pursuant to which QBC granted KSI exclusivity rights with respect to the sale of its Glatt Kosher products in Citi Field and agreed to provide certain advertising services to KSI in exchange for sponsorship payments made by KSI. QBC fully complied with its obligations under the Advertising Agreement, but beginning in or about May 2010, KSI defaulted on its payment obligations pursuant to the parties' agreement. Following several opportunities to cure its default, on July 1, 2010, QBC notified KSI that it was terminating its agreement with KSI.

KSI commenced this action on or about June 7, 2010 and on August 6, 2010 moved by order to show cause for an injunction barring QBC from terminating KSI or taking any action with respect to KSI's distribution of products at Citi Field. This Court held an evidentiary hearing on August 13, 2010 and issued an injunction that was subsequently memorialized in an order, dated August 25, 2010, enjoining QBC from "taking any action, directly or indirectly, with respect to, or affecting the time or method of sales of Kosher Sports products at Citi Field" (the "Order" (D.E. #21) at 1).

The Order, *which applies only to QBC,* explicitly recognized that KSI's distribution agreement with Aramark—and not KSI's Advertising Agreement with QBC—controls the time and manner in which KSI may operate at Citi Field. For this reason, this Court unequivocally stated that it was not requiring that KSI be allowed to operate at Citi Field on the Jewish Sabbath, and that "[t]he only injunction you are entitled to is that QBC may not order you not to

3

sell or attempt to influence anybody else not to sell during the pendency of the injunction." (*See* Aug. 13, 2010 Hearing Tr. ("Prel. Inj. Hearing Tr.") at 5:10-13).

On or about April 15, 2011, KSI filed a motion for contempt, arguing that QBC and Aramark had violated this Court's Order. On referral from this Court (*see* D.E. # 50), Magistrate Judge Mann presided over an evidentiary hearing held on June 28, 2011, at which she heard the testimony of KSI's President, Jonathan Katz and several Aramark and QBC witnesses. (*See* Report at 11.) The parties then submitted post-hearing briefs in accordance with the Magistrate's instruction. Based upon these briefs, as well as the extensive documentary and testimonial evidence adduced at the hearing, Magistrate Judge Mann issued a thorough and carefully reasoned 40-page decision denying KSI's motion in its entirety.

## ARGUMENT

I.  **LEGAL STANDARDS**

   A.  **The District Court May Only Reconsider the Magistrate's Report Under a Clearly Erroneous or Contrary to Law Standard**

KSI concedes, as it must, that a Magistrate Judge's decision on non-dispositive, pre-trial matters—including motions, like this one, for contempt—is subject to review under a "clearly erroneous" standard. *See* 28 U.S.C. § 636(b)(1)(A); (Plaintiff's Objections to Report and Recommendation ("KSI's Objections") (D.E. # 102) at 5). An order is clearly erroneous "*only* if a reviewing court, considering the entirety of the evidence, 'is left with the definite and firm conviction that a mistake has been committed'; an order is 'contrary to law' when it 'fails to apply or misapplies relevant statutes, case law, or rules of procedure.'" *Field Day, LLC*, No. 04-2202, 2010 U.S. Dist. LEXIS 137410, at *4 (E.D.N.Y. Dec. 30, 2010) (emphasis added) (quoting *E.E.O.C. v. First Wireless Group, Inc.*, 225 F.R.D. 404, 405 (E.D.N.Y. 2004)). This standard is

"highly deferential," "imposes a heavy burden on the objecting party," and "only permits reversal where the magistrate judge abused his discretion." *Id.* (quoting *Mitchell v. Century 21 Rustic Realty,* 233 F. Supp. 2d 418, 430 (E.D.N.Y. 2002)). Applying this stringent standard, the Magistrate's Report must be upheld because it is neither "clearly erroneous" nor "contrary to law."

### B. Standard for Civil Contempt

Remarkably, nowhere in KSI's 26-page brief does it discuss the legal standard for civil contempt. This is a glaring and telling omission considering that KSI now claims that the Magistrate's Report should be rejected as "clearly erroneous" and "contrary to law," but does not even address on what legal basis its application for contempt should have been granted.

As the Magistrate aptly noted in her Report, "a contempt order is a 'potent weapon,' that is inappropriate if 'there is a fair ground of doubt as to the wrongfulness of defendant's conduct.'" (Report at 12) (citing *Latino Officers Ass'n of New York, Inc. v. City of New York,* 558 F.3d 159, 165 (2d Cir. 2009) (internal citations omitted). A court may hold a party in civil contempt of an injunction *only if* the movant establishes that "(1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." (*Id.*) The moving party bears the high burden of establishing a violation by "clear and convincing" evidence. (*Id.*)

## II. THE MAGISTRATE'S REPORT WAS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW IN DENYING KSI'S MOTION FOR CONTEMPT

KSI's objections are predicated on the argument that the Report misapplies the law and ignores certain evidence pertaining to three alleged violations by QBC — none of which, as the

5

Magistrate found, were intended to—or, in fact did—impact the "time and method" of KSI's operations at Citi Field in the manner originally contemplated by this Court in issuing the Order.

### A. QBC's Publication of KSI's Days of Operation Did Not Violate the Order

First, KSI alleges that the Report is "contrary to law" in finding that QBC's publication of KSI's days of operations in the "A-to-Z Guide" and 2011 Citi Field Guest Services Handbook ("Guest Services Handbook") did not violate the Order.[1] However, KSI does not cite to a single case or point to any evidence which was overlooked; instead it merely restates the very same arguments that have already been considered and decisively rejected by the Magistrate.

For example, KSI argues again that the A-to-Z guide and the Guest Services Handbook were improperly revised to reflect that KSI's operations are limited to Sunday through Thursday, but does not (and cannot) explain how the days of operation listed were in any way inaccurate. To the contrary, as the Magistrate found, at the time the publications were disseminated, "[t]he two documents simply gave patrons, directly or through ballpark staff, accurate information as to when kosher food was available." (Report at 27.) There is no dispute that at all times relevant to this action (and, in fact, throughout its tenure at Citi Field and, before that, at Shea Stadium) and throughout the 2011 season, *KSI has only operated Sunday through Thursday*. Accordingly QBC's actions in revising the documents were nothing more than an attempt to accurately inform its fans as to the availability of Kosher foods.

Moreover, KSI disregards the Report's conclusion "that the publication of the guides did not, *without more*, violate the preliminary injunction" (*id.*) (emphasis added), and merely states in conclusory fashion that since QBC's actions took place after the Order was issued, the Report

---

[1] Both the A-to-Z Guide (available online on the Mets' website) and the Guest Service Handbook (available to guests at Citi Field) are a reference source provided by QBC to its guests at Citi Field. There is no dispute that following protests from KSI, QBC changed the A-to-Z Guide to remove reference to KSI's days of operation. (*See* Report at 27.)

6

is "contrary to law" (KSI's Objections at 7). There is simply no basis on the face of this argument, which merely restates facts that were both known and considered by the Magistrate, for rejecting any findings in the Report.

### B. QBC Did Not Violate the Order by Insisting That KSI Operate One Of Its Food Carts

Second, KSI claims that the Report is "contrary to law" insofar as it concerns the operation of one of KSI's food carts (K-428). (KSI's Objections at 5.) Much like in its original motion, KSI argues that QBC violated the Order by insisting that KSI operate one of its food carts on promenade level for the Pittsburgh series in September of 2010.

Putting aside the obvious irony in KSI now complaining about being "forced to operate" at Citi Field, KSI tries to conflate this narrow issue by arguing that it was allegedly QBC, not Aramark, that refused KSI's request to close location K-428. (*Id.* at 7.) However, as the Magistrate concluded on the basis of the documentary and testimonial evidence: "The record reflects that [Aramark's Director of Operations, Tom] Funk conveyed to plaintiff the same decision Aramark would have made of its own accord." (Report at 29.)

Moreover, the Magistrate Judge, while noting that QBC's conduct in this instance "arguably fell within the letter of the preliminary injunction," also stated unequivocally that such conduct "was not within the contemplated scope of the [O]rder." (*Id.* at 28.) The clear purpose and intent of the Order was to enjoin QBC from taking any action to *prevent* KSI from operating during the pendency of the injunction, as stated by this Court during the August 13th hearing:

> 'The only injunction you are entitled to is that [QBC] may not order you *not* to sell or attempt to influence anybody else *not* to sell during the pendency of the injunction.'

(*Id.* at 28-29) (emphasis added) (quoting Prel. Inj. Hearing. Tr. at 5.)

7

As the Magistrate concluded in her Report, "[t]he claimed violation is so technical and so *de minimus*, and so far removed from the purpose for which plaintiff sought the injunction" that neither a finding of contempt nor sanctions was warranted. (Report at 29) (emphasis in original).

### C. QBC's Post-Injunction Discussion With Aramark Did Not Violate the Order

Third, KSI claims that the Report is "clearly erroneous" and "disregards the overwhelming evidence" with respect to QBC's post-injunction discussion with Aramark. (KSI's Objections at 5, 10.) Here, once again, KSI mischaracterizes the evidence in a strained effort to make mountains out of molehills. There is no dispute—and QBC has never denied—that as its relationship with KSI continued to deteriorate, it began to explore the possibility of entering into a sponsorship deal with another Kosher vendor.

Indeed, as the Magistrate noted in her Report "[a]t the hearing, the QBC and Aramark witnesses acknowledged discussing 'contingency plans' for substitute kosher vendors should Katz leave the ballpark or be terminated by Aramark, but they insisted that defendant never asked Aramark to terminate plaintiff's contract." (Report at 8.) The Magistrate further found that "while defendant certainly would have preferred to have plaintiff out of Citi Field, defendant respected the injunction, and did not encourage Aramark to terminate its agreement with KSI after the injunction." (*Id.* at 24) (internal citations omitted). Moreover, "[n]o witness testified that any QBC employee asked Aramark to terminate plaintiff or limit plaintiff's sales at any point after the issuance of the injunction." (*Id.* at 19.)

In light of these damaging findings, KSI tries to cast doubt on Mike Landeen (QBC's Vice President of Venue Services) and Scott Kleckner's (Aramark's Resident District Manager

at Citi Field) credibility by relying on surreptitiously recorded conversations.[2] However, Magistrate Judge Mann—who had the advantage of seeing and hearing their live testimony at the contempt hearing—found their testimony to be credible (*see e.g.,* Report at 22, 26). She also found that "[t]he recorded statement by Kleckner, on which plaintiff relies, did not explicitly concern post-injunction conduct, and was by way of warning Katz that defendant had considered terminating plaintiff's operations and had sought a contingency plan in case their relationship with plaintiff 'went south.'" (*Id.* at 23.)

Simply put, as Magistrate Judge Mann recognized, both the documentary and testimonial evidence make clear that (i) by March of 2010, the relationship between KSI and QBC had significantly eroded;[3] (ii) beginning in May of 2010, KSI defaulted on its payment of sponsorship fees owed to QBC under the parties' Advertising Agreement; and (iii) on July 1, 2010, owing to KSI's failure to cure its breach, QBC terminated the parties' agreement. Against this backdrop, it is not surprising that QBC began to explore contingency plans in the event that either party decided to terminate their agreement.[4] Moreover, once QBC terminated its agreement with KSI, it naturally sought to replace the lost sponsorship revenue.[5]

KSI has done nothing to contradict these facts or establish how the Report is "clearly erroneous." There is no evidence that QBC took any steps to prevent or influence anyone else to

---

[2] Recording which the Magistrate ruled, on account of KSI's failure to timely disclose, could be used for impeachment purposes only, and not for the truth of the matter asserted. *See* August 5, 2011 Order (D.E. # 86) at 28.
[3] *See, e.g.,* Pltf. Ex. 14.
[4] *See* M. Landeen Tr. 159:13-160:13; S. Kleckner Tr. 232:24-233:5. In fact, QBC had good reason to be concerned about Mr. Katz walking away from his contract, since he had previously done so at MCU Park (the home of the Brooklyn Cyclones) in Coney Island. *See* M. Landeen Tr. at 129: 25; 146:13-24; and 148:2-11.
[5] *See* T. Funk Tr. 204:10-14 (Q: And do you know the reason why QBC or the Mets asked you to meet with other Kosher vendors even though Mr. Katz and KSI were still operating at Citi Field? A: I understood it that it was a contingent for a sponsorship agreement that the Mets were trying to fill.").

9

limit KSI's operations at Citi Field.[6] Merely reiterating arguments that the Magistrate found unconvincing is simply not enough to constitute a proper basis for overturning the Report.

### III. THE MAGISTRATE'S REPORT WAS NOT CLEARLY ERRONEOUS OR CONTRARY TO LAW IN FINDING THERE IS NO BASIS FOR ATTRIBUTING ARAMARK'S CONDUCT TO QBC

Lacking any direct basis for holding QBC in contempt, KSI continues to argue that non-party Aramark's actions with respect to KSI's Friday and Saturday operations should be attributed to Aramark. Once again, however, KSI offers no basis for overturning the Magistrate's finding that there is "no factual or legal basis on which to attribute to [QBC] Aramark's decision to bar [KSI] from operating on Friday and Saturdays." (Report at 39.)

#### A. Aramark Reached Its Own Conclusions Regarding KSI's Friday and Saturday Operations

In arguing that "QBC alone controlled KSI's ability to operate on Fridays and Saturday,"[7] KSI simply recites the same failed argument that has now been explicitly rejected by this Court and the Magistrate Judge. (*See* Order at 1 (finding that the Advertising Agreement "does not control or address the days or hours when, or locations where, KSI may sell its products at Citi Field"); Report at 3.)

As the Magistrate recognized, "Aramark appears to have held longstanding, albeit unwritten, objections to Friday-Saturday sales by KSI at Citi Field." (*See* Report at 18). In fact, Aramark stated that it has held the position that KSI's sale should be limited to selling kosher

---

[6] To the contrary KSI has, at all times relevant to this action, and continues to this day, to operate at Citi Field pursuant to its agreement with Aramark. As Aramark aptly states in its papers, "[i]ndeed, if QBC was influencing Aramark's behavior, they did a very poor job of it." (Aramark's Responsive Brief to Plaintiff Kosher Sports, Inc.'s Objections to Report and Recommendations, filed October 3, 2011 ("Aramark's Responsive Brief") (D.E. # 108) at 2.)

[7] In support of this proposition, KSI cites only to self-serving testimony by Jonathan Katz. KSI completely disregards the unambiguous language in the KSI-Aramark Concession Agreement stating that [t]he events at which the Products will be sold shall be determined by ARAMARK in consultation with [KSI]. [KSI] shall conduct its operation only during such hours as shall be specified by ARAMARK. (*See* Pltf. Ex. 6 [Concession Agreement], at Article 6.)

products on Sundays through Thursdays "since at least the spring of 2009 -- a year and a half *before* the Injunction issued." ( Aramark's Responsive Brief at 4) (emphasis added).

At the contempt hearing, Mr. Kleckner testified that he was concerned that allowing KSI to operate on Friday evenings and Saturdays would "compromise the integrity" of its Glatt Kosher offerings the other days of the week, and impede Aramark's ability to offer its clientele this specialty service at the "highest" possible level.[8] He also stated that he and his boss, Scott Weigert, were of the view that allowing KSI to expand its hours of operation to Friday evenings and Saturdays would represent a material departure from the financial terms originally agreed to under the parties' agreement.[9] The Magistrate found that "Kleckner testified credibly and in detail as to his position that such sales would undercut the ballpark's glatt kosher offerings and would risk alienating sabbath-observant Mets fans." (Report at 17-18.) The Report also states that "Aramark has provided several different reasons for that reluctance (referring to KSI's Friday and Saturday operations); these reasons are credible and not inconsistent with one another, and the Court has no reason to question their legitimacy." (*Id.* at 25.)

Moreover, contrary to KSI's contentions that the Magistrate "failed to give any weight" to certain testimony at the contempt hearing regarding KSI's Friday evening and Saturday operations at other venues, the Magistrate considered the testimony given by Mr. Katz at the contempt hearing and found that it was *"incomplete and contradicted by his prior sworn statements."* (*Id.* at 17.) (emphasis added)  Specifically, Mr. Katz testified at the contempt hearing that KSI operates at two other venues –Lincoln Financial Field (home of the Philadelphia Eagles) and M&T Bank Field (home of the Baltimore Ravens)—where Aramark is also the concession manager. The Report specifically details the inconsistencies in Mr. Katz's testimony:

---

[8] S. Kleckner Tr. 230:24-232:14.
[9] *See* Report at 9 (citing Hearing Trans. at 231).

11

> At the hearing, Katz testified that Aramark had asked plaintiff to sell kosher products at M&T Bank Stadium and Lincoln Financial Field. At his two depositions, however, Katz first denied operating on Friday nights or Saturdays at Lincoln Financial Field, and then stated that KSI operated at "maybe two or three events" at Lincoln Financial Field.

(*Id.* at 17) (internal citations omitted).

Moreover, the Magistrate concluded that "[w]hether KSI sold its products at 'two or three' Lincoln Field events, or none at all, the fact that Aramark allowed Friday-Saturday sales at a few football venues does not cause the Court to doubt the reasons stated by Aramark personnel for objecting to Friday-Saturday sales at Citi Field." (*Id.*) (internal citations omitted). It is also telling that, according to Mr. Katz, **KSI has never operated or even requested to operate** on Friday evenings and Saturdays at the other venues it operates at, including the Prudential Center, Oriole Park at Camden Yards (the only other Major League Baseball stadium KSI operates at) and the U.S. Open.[10]

As Magistrate Judge Mann aptly stated, "[t]he fact remains, however, that contrary to plaintiff's assertion that QBC influenced Aramark's decision-making after the issuance of the preliminary injunction, Aramark ultimately acted in accordance with its longstanding practice and stated views: Aramark did not terminate plaintiff, but continued to prohibit Friday-Saturday sales at the ballpark." (Report at 18.) Plaintiff has not met its heavy burden of proving that the Report is clearly erroneous, and thus the Magistrate Judge's findings should not be disturbed.

### B.     Aramark Is Not a Joint Venturer with QBC or an Agent of QBC

KSI contends that Magistrate Judge Mann erred in rejecting its argument that, as a matter of law, QBC may be held accountable for Aramark's decision to prevent KSI from operating on

---

[10] *See* Deposition of Jonathan Katz, May 9, 2011, at 38:13-20 (Prudential Center); 71:2-9 (U.S. Open); and 96:14-21 (Camden Yards).

Fridays and Saturdays, even if that decision was independently made. (KSI's Objections at 5.) However, in support of its contention, KSI does not point out a single new case, but rather simply reargues—in some places verbatim— its prior argument.

KSI attempts to impute Aramark's conduct onto QBC, and thus allow the Court to impose liability on QBC for the independent actions of non-party Aramark, by alleging that they are joint venturers. As the Magistrate found, KSI's conclusory allegations that QBC and Aramark are "joint venture partners" are, by themselves, insufficient as a matter of law to establish such a relationship. Under New York law, a plaintiff pleading the existence of a joint venture must demonstrate that: (1) two or more persons must enter into a specific agreement to carry on an enterprise for profit; (2) their agreement must evidence their intent to be joint venturers; (3) each must make a contribution of property, financing, skill, knowledge or effort; (4) each must have some degree of joint control over the venture; and (5) there must be a provision for the sharing of both profits and losses. (*See* Report at 35-36) (citing *Intel Containers Int'l Crop. v. Atlantrtrafik Exp. Serv. Ltd.*, 909 F.2d 698, 702 (2d Cir. 1990)). All of these elements must be present in order for a joint venture to have been formed. (*See id.*)

Here, after running through a concise list of facts that purportedly demonstrate QBC and Aramark's joint venture relationship, KSI asserts in a conclusory fashion that the Report failed to "properly credit the contemporaneous public statements of the parties as evidence of their joint venture partnership." (KSI's Objections at 23.) This is simply not true. The Magistrate specifically addressed this argument and found that "calling [a relationship] a partnership does

not make it one." (Report at 37 (citing *Kosower v. Gutowitz*, 00 Civ. 9011 (JGK), 2001 WL 1488440, at *6 (S.D.N.Y. Nov. 21, 2001)).[11]

Moreover, despite the Court's condemning statement that "plaintiff's counsel hinged his two-sentence argument... without any reference to the terms of the QBC-Aramark Agreement," (*id.* at 37) KSI still completely ignores the clear and unambiguous contractual language—explicitly referenced by the Court—defining QBC and Aramark's contract a "rights agreement" rather than a joint venture.

### C. QBC Is Not Liable for Aramark's Conduct Pursuant to Their Contractual Relationship

In a strained effort to portray Aramark as an "agent" of QBC, KSI misconstrues the language and intent of the Usage Agreement by claiming that all decisions and determinations with respect to KSI's operations are ultimately reserved to QBC and, for that reason, any decision made with respect to KSI's operations is made "'on behalf of' QBC." (KSI's Objections at 24.)

[redacted]

---

[11] [redacted]

14

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████ Moreover, the Court already rejected KSI's arguments and stated, "Plaintiff advances no legal support for this theory, and the Court discerns no basis on which it could assign defendant the responsibility for the independent actions of a non-party." (Report at 39.) Given KSI's mere repetition of its prior argument, and its complete failure to meet its burden of proving that the Report is clearly erroneous, the Court's should not disturb the Magistrate's finding that there is " no factual or legal basis on which to attribute to [QBC] Aramark's decision to bar plaintiff from operating on Fridays and Saturdays." (*Id.*)

## CONCLUSION

For the reasons set forth above, the Report should be upheld in its entirety.

Dated:  New York, New York
        October 6, 2011

                          HERRICK, FEINSTEIN LLP

                          By:  /s/Avery S. Mehlman
                                Avery S. Mehlman, Esq.
                                Jonathan L. Adler, Esq.
                                2 Park Avenue
                                New York, New York  10016
                                (212) 592-1400 (Phone)

                          *Attorneys for Defendant Queens*
                          *Ballpark Company, LLC*

████████████████████████