**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

KOSHER SPORTS, INC.,

Plaintiff,

-against-

QUEENS BALLPARK COMPANY, LLC,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

CASE NO.: CV-10-2618 (JBW)(RLM)

ORAL ARGUMENT REQUESTED

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS 12(c) MOTION FOR JUDGMENT ON THE PLEADINGS FOR FAILURE TO JOIN AN INDISPENSABLE PARTY**

Avery S. Mehlman, Esq.
Jonathan L. Adler, Esq.
HERRICK, FEINSTEIN LLP
2 Park Avenue
New York, New York 10016
(212) 592-1400

*Attorneys for Defendant Queens Ballpark Company, LLC*

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 3

ARGUMENT .......... 7

I. Legal Standards .......... 7

II. Aramark Is A Necessary Party Under Fed. R. Civ. P. 19(a) .......... 9

1. The Court Cannot Afford Complete Relief in Aramark's Absence .......... 9

2. Aramark Has A Significant Interest In This Action, And Its Absence Will Impair Its Ability To Protect This Interest .......... 11

3. The Parties Would Be Subject To A Substantial Risk Of Incurring Double, Multiple, Or Otherwise Inconsistent Obligations On Account Of Aramark's Continued Absence From The Litigation .......... 12

III. If Aramark Cannot Be Joined To The Action, The Case Should Be Dismissed .......... 13

CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Alex Charts and Charting Assoc., Inc. v. Nationwide Mut. Ins. Co.*,
16 Fed. Appx. 44 (2d Cir. 2001) .......... 8

*Am. Home Assur. Co. v. Babcock & Wilcox Co.*,
06-CV-6506, 2007 U.S. Dist. LEXIS 89940 (E.D.N.Y. Dec. 6, 2007) .......... 9, 10

*American Optical Co. v. Curtiss*,
59 F.R.D. 644 (S.D.N.Y. 1973) .......... 13

*Bartfield v. Murphy*,
578 F. Supp. 2d 638 (S.D.N.Y. 2008) .......... 14

*Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*,
09 Civ. 1431 (SAS), 2009 U.S. Dist. LEXIS 60980 (S.D.N.Y. July 16, 2009) .......... 12

*Dunn v. Std. Bank London Ltd.*,
05 CIV. 2749 (DLC), 2006 U.S. Dist. LEXIS 3115 (S.D.N.Y. Jan. 31, 2006) .......... 12

*First State Life Ins. Investors, Inc. v. 20th Century Corp.*,
309 F. Supp. 1390 (D. Del 1969) .......... 14, 15

*Freeman v. Marine Midland Bank-New York*,
419 F. Supp. 440 (E.D.N.Y. 1976) .......... 7

*German v. Federal Home Loan Mortg. Corp.*,
885 F. Supp. 537 (S.D.N.Y. 1995) .......... 9

*Global Detection and Reporting, Inc., v. Securetec Detektions-Systeme AG*,
No. 08 Civ. 5411 (GEL), 2008 U.S. Dist. LEXIS 95038 (S.D.N.Y. 2008) .......... 10

*Global Disc. Travel Servs., LLC v. Trans World Airlines*
960 F. Supp. 701 (S.D.N.Y. 1997) .......... 7, 10

*Imperial Appliance Corp. v. Hamilton Mfg. Co.*,
263 F. Supp. 1015 (D. Wis. 1967) .......... 13

*Kraebel v. New York City Dep't of Hous. Pres. and Dev.*,
90 Civ. 4391 (CSH), 1994 U.S. Dist. LEXIS 4619 (S.D.N.Y. Apr. 11, 1994) .......... 7, 10

*LoCurto v. LoCurto*,
07 Civ. 8238 (NRB)2008 U.S. Dist. LEXIS 78862 (S.D.N.Y. Sept. 28 2008) .......... 14

*Pan Am. World Airways, Inc. v. Vetements, Inc.*,
08 Civ. 5480 (RJH), 2010 U.S. Dist. LEXIS 97713 (S.D.N.Y. Sept. 17, 2010).................9, 13

*Prestenback v. Employers' Ins. Co.*,
47 F.R.D. 163 (*D.C.La.* 1969)............................................................................13

*Provident Tradesmens Bank & Trust Co. v. Patterson*,
390 U.S. 102 (1968) ..........................................................................................7, 15

*Ryan v. Volpone Stamp Co., Inc.*,
107 F. Supp. 2d 369 (S.D.N.Y. 2000)..................................................................10

*Schutten v. Shell Oil Co.*,
421 F.2d 869 (5th Cir. 1970)................................................................................11

*The Legal Aid Society v. City of New York*,
114 F. Supp. 2d 204 (S.D.N.Y. 2000)....................................................................8

*United Mine Workers of America v. Gibbs*,
383 U.S. 715 (1966) ..............................................................................................8

## Rules and Treatises

Charles A Wright & Arthur R. Miller, *Federal Practice & Procedure* (3d. ed. 2004).........1, 7, 14

Fed. R. Civ. P. 12(c)..................................................................................................1

Fed. R. Civ. P. 12(h)(2)..............................................................................................1

Fed. R. Civ. P. 19 ...........................................................................................*passim*

Defendant Queens Ballpark Company, LLC ("QBC") respectfully submits this memorandum of law in support of its motion, pursuant to Fed. R. Civ. P. 12(c) and 19(b), for judgment on the pleadings for failure to join an indispensable party.[1]

**PRELIMINARY STATEMENT**

Through this action, plaintiff Kosher Sports, Inc. ("KSI") seeks damages and specific performance of what it alleges is its contractual right under its ten-year marketing and advertising agreement with QBC entered on January 23, 2008 (the "Advertising Agreement") to operate its Kosher food carts at Citi Field on Friday evenings and Saturdays (the "Jewish Sabbath"). Now that discovery has concluded, there can be no real dispute that Aramark Sports and Entertainment Services, LLC ("Aramark") is a necessary party to this litigation and that the Court cannot fairly adjudicate this matter without Aramark's joinder.

Indeed, from the outset of this litigation, this Court recognized that the ***"Advertising Agreement . . . does not control or address the days and hours when, or locations where, KSI may sell its products at Citi Field.***" (Dckt. # 21) (emphasis added). Nevertheless, throughout this litigation, KSI has sought to have its cake and eat it too by declining to join Aramark as a party in this suit, and continuing to operate at Citi Field pursuant to its contractual relationship with Aramark, while at the same time, repeatedly putting Aramark at the front and center of this action, including by conflating its separate and independent contractual relationships with QBC and Aramark, by seeking to hold Aramark in contempt of this Court's August 25, 2010 preliminary injunction order (which was not even directed to Aramark), and through the ultimate

[1] Fed. R. Civ. P. 12(h)(2) provides that the defense of failure to join a party required under Rule 19(b) may be raised by a motion under Rule 12(c) for judgment on the pleadings. *See* Fed. R. Civ. P. 12(h)(2); 5C Charles A Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1367 (3d. ed. 2004) [hereinafter Wright & Miller].

injunctive and declaratory relief it is seeking which would abrogate Aramark's rights under its agreement with KSI.

As Magistrate Judge Mann aptly noted in her August 26, 2011 Report and Recommendation ("August 26th R&R") denying KSI's motion for contempt in its entirety, there are fundamental "***fairness questions raised by Aramark's non-party status***" in this case stemming from the fact that:

> [I]n contrast to [QBC], Aramark has explicit contractual rights over many aspects of [KSI's] day-to-day operations at Citi Field. Under the KSI-Aramark Agreement, [KSI] may sell only 'from locations . . . to be designated at the sole discretion of ARAMARK …. ARAMARK retains the rights to modify or alter Concession Locations or relocate [KSI] to alternative Concession Locations from time to time.' KSI may not sell any products not designated, nor post any signs or advertising not approved, by Aramark. KSI 'shall conduct its operations only during such hours as shall be specified by ARAMARK.'

(Ex. [August 26th R&R] at 32-34) (internal citations omitted) (emphasis added).[2,3]

On this basis, the Magistrate concluded that extending an injunctive order that affected the time or method of sales of KSI's food products at Citi Field to Aramark would be tantamount to rendering Aramark's contractual relationship with KSI "meaningless." (*Id.* at 34). By the same token, any injunctive or declaratory relief afforded by this Court relating to the time and manner of KSI's operations would necessarily impede on KSI's contractual relationship with Aramark.

---

[2] Unless otherwise noted, references to "Ex. __" refer to the Exhibits attached to the Declaration of Avery Mehlman in Support of Defendant's Motions for Judgment on the Pleadings and for Summary Judgment, dated January 30, 2012 ("Mehlman Decl.") filed contemporaneously herewith.

[3] The August 26th R&R was adopted by this Court in its entirety on November 18, 2011. (D.E. # 120). "A Report and Recommendation prepared by a magistrate judge and adopted by a district judge, constitutes the law of the case for all issues addressed in the report." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 759 F. Supp. 2d 417, 424 n.5 (S.D.N.Y. 2010); *see also Martal Cosmetics, Ltd. v. Int'l Beauty Exch. Inc.*, No. 01-cv-7595 (TLM), 2011 U.S. Dist. LEXIS 95021, at *34 (E.D.N.Y. Aug. 23, 2011); *Bey v. I.B.E.W. Local Union No. 3*, No. 05 Civ. 7910 (JSR)(MHD), 2009 U.S.Dist. LEXIS 3505, at *3 (S.D.N.Y. Jan. 7 2009).

Accordingly, it is apparent that Aramark is a necessary party to the litigation and that the case cannot proceed without them. No matter how KSI may construe the relationship between QBC and Aramark, there is simply no dispute that the core relief KSI is seeking (*i.e.*, the right to operate its food carts on Fridays and Saturdays) would interfere with Aramark's contractual rights under its existing concession agreement with KSI (the "Concession Agreement").

As such, this Court "in equity and good conscience" cannot accord complete relief among the existing parties unless Aramark is joined in suit, and to proceed otherwise, would risk substantial prejudice to Aramark, which has a clear interest in the subject matter of this litigation and has, in no uncertain terms, stated its opposition to KSI's request to operate on the Jewish Sabbath. Finally, given the ongoing contractual relationship between Aramark and KSI, any disposition of this matter in the absence of Aramark would likely spawn another round of litigation, which could result in conflicting obligations on the parties involved, not to mention a waste of judicial resources.

Therefore, the Court should order KSI to join Aramark as a necessary party. If KSI is unable to do so, this Court must dismiss the action.

## BACKGROUND

On or about January 31, 2008, KSI entered into a multi-year Advertising Agreement with QBC. As the name implies, the Advertising Agreement was intended solely to provide KSI with certain advertising and related services—namely, yearbook and scoreboard advertisements, season tickets, and, most importantly, sell exclusivity with respect to certain of its Kosher and Glatt Kosher products at Citi Field—in exchange for an annual sponsorship payment, payable in six monthly installments. (*See* Dckt. #58 [QBC's Answer, Separate Defenses, Counterclaims and Jury Demand] ¶¶ 6-7). As this Court has already observed, the Advertising Agreement does

not address or control the time or manner in which KSI sells its products at Citi Field. (*See* Ex. 3 [Advertising Agreement].) Rather, those rights are governed by KSI's Concession Agreement with Aramark, ***to which QBC is not a party***, and which expressly provides:

> ARTICLE 1 - Concessionaire's Privileges
>
> Products shall be sold from locations at [Citi Field] to be designated ***at the sole discretion of Aramark*** . . . Aramark retains the right to modify or alter Concession Locations or relocate [KSI] to alternative Concession Locations from time to time, and in no instance shall Aramark have any liability to [KSI] resulting from such modification, alteration, or relocation.
>
> ARTICLE 6 - Events; Hours of Operations
>
> The events at which the Products will be sold ***shall be determined by Aramark*** in consultation with [KSI]. ***[KSI] shall conduct its operations only during such hours as shall be specified by Aramark***.

(Ex. 14 [Concession Agreement] at Article 6) (emphasis added).

QBC fully complied with its obligations under the Advertising Agreement, but beginning in or about May 2010, KSI defaulted on its payment obligations pursuant to the Advertising Agreement. Following several opportunities to cure its default, on July 1, 2010, QBC notified KSI that it was terminating its Advertising Agreement with KSI. (*See* Ex. 10 [Termination Letter]).

In its termination letter, QBC expressly stated that ***"the actions we are taking relate only to the [Advertising] Agreement and shall have no impact upon any rights and obligations of KSI pursuant to the Concession License Agreement between KSI and Aramark."*** (*Id.*) (emphasis added). In fact, since QBC terminated its Advertising Agreement with KSI, KSI has continued to operate in precisely the same manner in which it operated before commencing this action and, indeed, since Citi Field first opened in 2009.

KSI commenced this action on June 7, 2010, and filed its Supplemental Second Amended Complaint (the "Complaint") on April 24, 2011. KSI did not name Aramark in its lawsuit. In its Complaint, KSI asserts claims for breach of contract, unjust enrichment and tortious interference against QBC, and, *inter alia*, seeks declaratory and injunctive relief in the form of an order:

- "for specific performance of the [Advertising] Agreement whereby KSI Food Products are permitted to be sold and distributed on all days of the week, without limitation, at all events at the Ballpark at which admission is made available to members of the general public, including Friday nights and Saturdays . . . ." (D.E. #56 [Complaint] at 9);

- "declaring the legal rights and relationship of the parties, including that… for the term of the [Advertising] Agreement, KSI has the exclusive right to sell and distribute KSI Food Products during all events at the Ballpark at which admission is made available to members of the general public, including Friday nights and Saturdays . . . ." (*Id.* at 10).

On August 6, 2010, KSI moved by order to show cause for an injunction barring QBC from terminating KSI or taking any action with respect to KSI's distribution of products at Citi Field. This Court held an evidentiary hearing on August 13, 2010 and issued an injunction that was subsequently memorialized in an order, dated August 25, 2010, enjoining QBC from "taking any action, directly or indirectly, with respect to, or affecting the time or method of sales of Kosher Sports products at Citi Field" (the "Order" (Dckt. #21) at 1). The Order, which applies only to QBC, explicitly recognized that KSI's Concession Agreement with Aramark does not control the time and manner in which KSI may operate at Citi Field. (*See id.*).

On or about April 15, 2011, KSI filed a motion for contempt, arguing that QBC and Aramark had violated this Court's Order. On referral from this Court (*see* Dckt. # 50), Magistrate Judge Mann presided over an evidentiary hearing held on June 28, 2011, at which she heard the testimony of KSI's President, Jonathan Katz and the key Aramark and QBC witnesses. (*See* Ex. 5 [August 26th R&R] at 11). Based upon the extensive documentary and testimonial

evidence adduced at the hearing, Magistrate Judge Mann issued a thorough and carefully reasoned 40-page decision denying KSI's motion in its entirety.

Among other things, in specifically rejecting the myriad of theories advanced by KSI for attributing Aramark's conduct to QBC (and, remarkably, for holding both QBC and Aramark in contempt), the Magistrate found that:

- "The record suggests that Aramark independently decided to prevent plaintiff from selling on Fridays and Saturdays." (Ex. 5 [August 26th R&R] at 13);

- "[T]he terms of the preliminary injunction show that the order was not intended to apply to Aramark's conduct" and that "[t]hose terms could not, in fairness, be applied to Aramark, as they would render meaningless Aramark's contract with Plaintiff." (*Id.* at 30);

- There is "no factual or legal basis on which to attribute to defendant Aramark's decision to bar plaintiff from operating on Fridays and Saturdays." (*Id.* at 39);

- "Aramark is not 'legally identified' with defendant, the party named in the preliminary injunction, and . . . that order was drafted to exclude Aramark's independent actions." (*Id.* at 30.); and

- "The evidence does not support a finding that defendant and Aramark operated the Citi Field concessions as a joint venture, and the preliminary injunction cannot be extended to Aramark's conduct on the basis of such a theory."[4] (*Id.* at 35).

This Court adopted the August 26th R&R on November 18, 2011. (Dckt. #120).

Now that discovery has ended and this case is set for trial, the Court can no longer condone KSI's ill-conceived attempts to try Aramark in absentia, nor can it fully adjudicate this matter without Aramark in the case.

---

[4] In finding that Aramark is not "legally identified" with QBC, the Magistrate Judge also considered and rejected KSI's argument that Aramark's actions with respect to KSI are attributable to QBC pursuant to the Amended and Restated Usage Agreement between QBC and Aramark, dated July 12, 2010 ("Usage Agreement").

## ARGUMENT

### I. Legal Standards

"The defense of failure to join an indispensable party has to be considered by the court at whatever stage of the proceedings it might be raised." 5C Wright & Miller, *supra* note 1, at § 1392 n.2. To determine whether to dismiss an action for failure to join a "required" party pursuant to Fed. R. Civ. P. 19, a court must undertake a two-step inquiry.[5] *See Global Disc. Travel Servs., LLC v. Trans World Airlines* 960 F. Supp. 701, 707 (S.D.N.Y. 1997). There is no precise formula for determining whether a particular non-party must be joined under Rule 19. *See* 7 Wright & Miller, *supra* note 1, at § 1604; *Kraebel v. New York City Dep't of Hous. Pres. and Dev.*, 90 Civ. 4391 (CSH), 1994 U.S. Dist. LEXIS 4619, at *5 (S.D.N.Y. Apr. 11, 1994); *Freeman v. Marine Midland Bank-New York*, 419 F. Supp. 440, 450 (E.D.N.Y. 1976). Pragmatic considerations are controlling, and the list of factors found in Rule 19 is not intended to be exclusive. *See* 7 Wright & Miller, *supra* note 1, at § 1601; *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 107, 118 (1968). "[T]he impulse is towards entertaining the broadest possible scope of action, consistent with fairness to parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966) (superseded by statute on other grounds).

First, the Court must determine if an absent party's presence is "necessary" under Fed. R. Civ. P. 19(a). *See Global Discount Travel Servs.*, 960 F. Supp. at 707. A party is "necessary" under Rule 19(a) where one of the following criteria is met: (1) "in that person's absence, the

---

[5] The Court should apply the same standard to the present 12(c) motion as if it were a pre-answer motion brought under 12(b)(7). 5C Wright & Miller, *supra* note 1, at § 1367. Under this standard, the moving party "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." *Mattera v. Clear Channel Communs., Inc.*, 239 F.R.D. 70, 74 (S.D.N.Y. 2006) (quoting *Holland v. Fahnestock & Co.*, 210 F.R.D. 487, 495 (S.D.N.Y. 2002). In deciding the motion, "the court may consider matters outside the pleadings." *Id.* (citing *Holland*, 210 F.R.D. at 495).

court cannot accord complete relief among existing parties;" (2) the absent party "claims an interest relating to the subject of the action" and will be prejudiced by non-joinder; or (3) the absence of a party will "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a).

Second, if after applying the factors in Rule 19(a), the court determines that the absent party is necessary, but joinder is not feasible, the court must then determine whether the party is "indispensable" within the meaning of Fed. R. Civ. P. 19(b), *i.e.*, whether "'in equity and good conscience,' the action should be dismissed because the nonparty is 'indispensible.'" *The Legal Aid Society v. City of New York*, 114 F. Supp. 2d 204, 219 (S.D.N.Y. 2000). In making this determination, the court considers four factors:

> [F]irst, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence would be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

*ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 682 (2d Cir. 1996) (citing Fed. R. Civ. P. l9(b)). If, after weighing the four factors, "the Court determines that the case may not proceed in the party's absence, the party is considered 'indispensable,' and the action should be dismissed." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 579 (S.D.N.Y. 1995).

As shown below, Aramark is both a necessary and an indispensable party. Accordingly, the Court should order KSI to join Aramark. If Aramark cannot be joined, this Court must dismiss the action.

## II. Aramark Is A Necessary Party Under Fed. R. Civ. P. 19(a)

1. The Court Cannot Accord Complete Relief in Aramark's Absence

Simply put, the Court cannot grant the core relief requested by KSI—*i.e.*, the right to operate on Fridays and Saturdays at Citi Field, and the provision of a fourth cart in a mutually agreed upon area of the ballpark—unless Aramark is a party to this action. There is no dispute, as this Court has already recognized, that in contrast to QBC, Aramark has "explicit contractual rights over many aspects of [KSI's] day-to-day operations at Citi Field," which are embodied in the Concession Agreement. (Ex. 5 [August 26th R&R] at 33.) This includes, significantly, the right to determine (i) the events; (ii) hours; and (iii) locations at which KSI products are sold. (*See id.* at 33; *see also* Ex. 14 [Concession Agreement] at Art. 1, 6). Accordingly, if entered, the injunctive and declaratory relief KSI is seeking would necessarily require specific performance by Aramark, a non-party, under the terms of its existing Concession Agreement with KSI.

"[A] judgment rendered in [the non-party's] absence is not only prejudicial to [the non-party], but is potentially prejudicial to [plaintiff] and [defendant], who may not be able to obtain full relief." *Am. Home Assur. Co. v. Babcock & Wilcox Co.*, 06-CV-6506, 2007 U.S. Dist. LEXIS 89940, at *9-10 (E.D.N.Y. Dec. 6, 2007). Where, as here, the relief being sought implicates the performance under an agreement by an absent party, that party is considered a "necessary" party to the action. *See LoCurto v. LoCurto*, 07 Civ. 8238 (NRB), 2008 U.S. Dist. LEXIS 78862 (S.D.N.Y. Sept. 25 2008) (dismissing complaint where plaintiff's requested relief of specific performance could not be granted without the joinder of the non-party who would be required to act in order to accord complete relief); *Pan Am. World Airways, Inc. v. Vetements, Inc.*, 08 Civ. 5480 (RJH), 2010 U.S. Dist. LEXIS 97713 (S.D.N.Y. Sept. 17, 2010) (holding that a non-party was a "necessary" party under Rule 19 because it was a signatory to the contract at

issue in the dispute); *Ryan v. Volpone Stamp Co., Inc.*, 107 F. Supp. 2d 369, 387 (S.D.N.Y. 2000) ("It is well established that a party to a contract which is the subject of the litigation is considered a necessary party."); *Global Detection and Reporting, Inc., v. Securetec Detektions-Systeme AG*, No. 08 Civ. 5411 (GEL), 2008 U.S. Dist. LEXIS 95038 (S.D.N.Y. 2008); *Global Discount Travel Services, LLC v. Trans World Airlines, Inc.*, 960 F. Supp. 701, 707-08 (S.D.N.Y. 1997).

The court's decision in *Felix Cinematografica v. Penthouse International, Ltd.*, is instructive. 99 F.R.D. 167 (S.D.N.Y. 1983). In *Felix Cinematografica*, the parties entered into two separate agreements concerning the production and exploitation of a film and the rights of the participants to the distribution of its earnings. The court found that plaintiff's claims could not be determined without deciding which of the two agreements—one of which was signed by defendant while the other was signed by a non-party—controlled the dispute. *Id.* at 171. The two agreements were so "interrelated" that the non-party's presence was required to adjudicate plaintiff's claims. *Id.* Accordingly, the court held that the non-party was an indispensable party and dismissed the complaint. *Id.* at 174.

The absence of Aramark from this litigation has put the Court between a proverbial "rock and a hard place." That is, the Court in fashioning its relief cannot bind Aramark, an absent party; however, given the nature of Aramark's contractual relationship with KSI, any relief that does not include Aramark would necessarily be incomplete. *See e.g., Am. Home Assur. Co.*, 2007 U.S. Dist. LEXIS 89940 (holding that the absent party was necessary because any declaratory relief granted in the non-parties' absence would "be less than full"). *Kraebel v. New York City Dep't of Hous. Pres. and Dev.*, 90 Civ. 4391 (CSH), 1994 U.S. Dist. LEXIS 4619, at *5 (S.D.N.Y. Apr. 11, 1994) (holding that the Court could not grant full injunctive relief without

joinder of a non-party); *cf. Schutten v. Shell Oil Co.*, 421 F.2d 869, 874 (5th Cir. 1970) ("The court must guard against the formation of 'paper' decrees which neither adjudicate nor, in the end, protect rights.").

Because the relief being sought by KSI implicates the time and manner of KSI's operations at Citi Field, and such matters are exclusively within the scope of KSI's Concession Agreement with Aramark, Aramark is a "necessary" party under Rule 19 and must be joined in this action.

2. Aramark Has A Significant Interest In This Action, And Its Absence Will Impair Its Ability To Protect This Interest

In resolving this litigation, this Court will necessarily have to determine issues relating to the days and hours when, and locations where, KSI operates its food carts at Citi Field—matters which, as set forth above, are governed by Aramark's Concession Agreement with KSI. Thus, any decision by this Court as to the time and manner of KSI's operation will *ipso facto* affect Aramark's rights under its existing Concession Agreement with KSI.

Moreover, this Court already found credible testimony from the head Aramark representative as Citi Field establishing that Aramark has held "longstanding, albeit unwritten, objections to Friday-Saturday sales by KSI at Citi Field," and "independently decided" to prevent KSI from selling on such days. (Ex. 5 [August 26th R&R] at 13, 18). The record further makes clear that these objections were based on legitimate business and financial concerns, including that: (i) such sales would undercut the ballpark's Glatt Kosher offerings by undermining credibility with Sabbath-observant patrons; (ii) such sales were not contemplated in the Concession Agreement and would need to be "under very different financial terms"; and (iii) that Aramark made more money on Fridays and Saturdays when it operated its own carts in place of KSI's. (*See id.* at 16-18).

Consequently, far from being a disinterested spectator in this litigation, the record is undisputed that Aramark has independent and significant business and financial interests in the outcome of this litigation which are not being represented by any party in the case. *See e.g.*, *Davidson Well Drilling, Ltd. v. Bristol-Myers Squibb Co.*, 09 Civ. 1431 (SAS), 2009 U.S. Dist. LEXIS 60980 (S.D.N.Y. July 16, 2009) (finding that defendant and non-party, although closely related, had separate and distinct interests in the litigation that could not be resolved without non-party's joinder); *Dunn v. Std. Bank London Ltd.*, 05 CIV. 2749 (DLC), 2006 U.S. Dist. LEXIS 3115, at *10 (S.D.N.Y. Jan. 31, 2006) ("If the resolution of a plaintiff's claim would require the definition of a non-party's rights under a contract, it is likely that the non-party is necessary under Rule 19(a).") (quoting *Jonesfilm v. Lion Gate Int'l*, 299 F.3d 134, 141 (2d Cir. 2002)).

Because Aramark's continued absence from this suit will "impair or impede" its ability to protect its interests, it is a necessary party. Fed. R. Civ. P. 19(a)(1)(B).

3. The Parties Would Be Subject To A Substantial Risk Of Incurring Double, Multiple, Or Otherwise Inconsistent Obligations On Account Of Aramark's Continued Absence From The Litigation

Aramark is also a necessary party because allowing the case to proceed in its absence would expose the parties "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). As established, above, there is no dispute that the time and manner of KSI's operations falls within the scope of Aramark's existing Concession Agreement with KSI. Accordingly, any declaratory or injunctive relief the Court might issue with respect to KSI's Friday and Saturday operations would be "hollow" without Aramark in the case, and subject all parties to the risk of multiple litigation or inconsistent relief. *See Pan Am. World Airways, Inc.*, 2010 U.S. Dist. LEXIS at *10 (stating that failure to require joinder of a signatory to a contract would create potential for entirely duplicative litigation in

other forums); *Prestenback v. Employers' Ins. Co.*, 47 F.R.D. 163, 167 (E.D. La. Mar. 11, 1969) ("Multiplicity of lawsuits resulting from the same essential subject matter and inconsistent verdicts directly undermine the public interest in judicial efficiency and consistency.").

**III. If Aramark Cannot Be Joined To The Action, The Case Should Be Dismissed**

Here, Aramark is not only necessary, but also indispensable to the fair and equitable resolution of this action. "Each determination as to whether to discontinue an action minus a party or to go ahead, is the result of a balancing of several factors" including consideration of "the prejudice to the absent party in going ahead." *American Optical Co. v. Curtiss*, 59 F.R.D. 644, 648 (S.D.N.Y. Mar. 16, 1973); *see also Imperial Appliance Corp. v. Hamilton Mfg. Co.*, 263 F. Supp. 1015, 1017 (E.D. Wis. 1967) ("The paramount considerations for dismissal or continuance are prejudice to the interests of the absentee and to those of the parties to the suit.").

For the reasons set forth above, Aramark will be prejudiced by any judgment entered in its absence, particularly to the extent that such judgment impacts the time and manner of KSI's operations at Citi Field. Magistrate Judge Mann already determined that extending this Court's preliminary injunction order enjoining the parties from taking any actions affecting the time or method of sales of KSI's food products to non-party Aramark would, in effect, render Aramark's contractual relationship with KSI "meaningless." (Ex 5 [August 26th R&R] at 34). By the same token, any final judgment by this Court impacting the time and/or manner of KSI's operations at Citi Field would necessarily impede on Aramark's contractual rights under its existing Concession Agreement with KSI. Moreover, both QBC and KSI would also be prejudiced if a judgment is entered in Aramark's absence because such a judgment, regardless in whose favor it is rendered, will likely result in needless and duplicative litigation.

The prejudice resulting from Aramark's continuing absence from this case far outweighs any prejudice to existing parties that might result from Aramark's late addition to this litigation. Both parties have already had an opportunity to obtain third-party discovery from Aramark and, indeed, the very same Aramark witnesses who would likely testify at trial have already been deposed and given testimony in connection with the June 28th Evidentiary Hearing conducted by this Court.

Nor is there any way of shaping the relief requested by KSI in a manner that would prevent or even mitigate the prejudice that otherwise would result in Aramark's continued absence from this litigation. *See* Fed. R. Civ. P. 19(b) ("The factors to be considered by the court include . . . the extent to which . . . by the shaping of relief, or other measures, the prejudice can be lessened or avoided.") The relief that KSI is seeking is clear: specific performance and declaratory judgment whereby "KSI Food Products are permitted to be sold and distributed on all days of the week, without limitation, at all events at the Ballpark at which admission is made available to members of the general public, including Friday nights and Saturdays…." (Dckt. # 56 ["Complaint"] at 9-10). Because an order compelling such performance directly impacts Aramark and cannot be carried out without Aramark's consent, Aramark is an indispensable party, and no formulation of KSI's relief can lessen the prejudice resulting from Aramark's absence from this case. *See* 7 Wright & Miller, *supra* note 1, at § 1613 ("[I]n an action seeking specific performance of a contract all persons who will be required to act to carry out a court order compelling performance have been held to be indispensable parties."); *see also LoCurto v. LoCurto*, 07 Civ. 8238 (NRB), 2008 U.S. Dist. LEXIS 78862 (S.D.N.Y. Sept. 28 2008); *Bartfield v. Murphy*, 578 F. Supp. 2d 638, 651 (S.D.N.Y. 2008) (dismissing plaintiff's declaratory judgment claim because "the requested judgment would directly determine the rights

of [the non-joined] party"); *cf. First State Life Ins. Investors, Inc. v. 20th Century Corp.*, 309 F. Supp. 1390, 1392 (D. Del 1969) ("In order to fashion a decree carrying out the prayers for relief, [the non-party] must perform certain acts and functions. Accordingly, in my view, it is an indispensable party.").

The court's decision in *B. Fernandez & Hnos., Inc. v. Kellogg USA*, Inc. is particularly instructive. 472 F. Supp. 2d 128 (D.P.R. 2006). *In B. Fernandez*, plaintiffs and a non-party entered into an agreement which provided that the non-party would purchase Kellogg products from the plaintiffs. The contract also stated that the non-party had been assigned defendant's interest in a separate distribution agreement, which still remained in full force and effect. After the non-party notified plaintiffs that it was exercising one of its rights under the distribution agreement, plaintiffs sued defendant *without naming the non-party in the suit*. The court found that the non-party was an indispensable party "insofar as Plaintiffs were seeking an injunction, and that [the non-party's] contractual rights would be affected by the Court's proposed remedy of specific performance." *Id.* at 132. The Court further held that the non-party must be joined so that it could defend its interests and that "[a]ny adverse judgment by this Court, in the absence of [non-party] as a party hereto, would be prejudicial to [the non-party]." *Id.*

Just as in *B. Fernandez,* the effect of failing to join Aramark as a party in this case is manifest, both in terms of the prejudice to Aramark and to the existing parties, as well as to the Court's fundamental interest in the "complete, consistent, and efficient" settlement of controversies. *Provident Tradesmens Bank & Ttust Co. v. Patterson*, 390 U.S. 102, 111 (1968). Accordingly, if Aramark cannot be joined as a party, the Court in "equity and good conscious" must dismiss the case.

## CONCLUSION

For the reasons set forth above, Aramark is both a necessary and indispensable party, and if it is not joined, this lawsuit should be dismissed.

Dated: New York, New York
January 30, 2012

**HERRICK, FEINSTEIN LLP**
By: /s/Avery S. Mehlman
Avery S. Mehlman, Esq.
Jonathan L. Adler, Esq.
2 Park Avenue
New York, New York 10016
(212) 592-1400

*Attorneys for Defendant Queens Ballpark Company, LLC*