UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------x
KOSHER SPORTS, INC.           :
                              :
            Plaintiff,        :
                              :
      -against-               :   Case No CV-10-2618 (JBW) (RLM)
                              :
QUEENS BALLPARK COMPANY, LLC  :
                              :
            Defendant.        :
                              :
------------------------------------x

## DEFENDANT QUEENS BALLPARK COMPANY, LLC'S RESPONSE TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant Queens Ballpark Company, LLC ("QBC"), respectfully submits the following Response to Plaintiff Kosher Sports, Inc.'s ("Plaintiff" or "KSI") Statement of Undisputed Material Facts, dated January 30, 2012 ("KSI's 56.1 Statement"). QBC objects to KSI's 56.1 Statement to the extent it contains conclusions of law and fact or legal argument. QBC further objects to KSI's 56.1 Statement to the extent that it is supported by inadmissible evidence or evidence not properly disclosed in accordance with the Federal Rules of Civil Procedure. QBC does not in any way waive or intend to waive, but rather expressly reserves, its rights to contest all issues relating to the admissibility of the evidence cited by KSI, and does not concede the relevance or materiality of the subject matter of any of the facts set forth by KSI. For the sake of brevity, the above objections are incorporated into each of Defendant's individual responses.[1]

---

[1] QBC incorporates by reference, as additional undisputed material facts, its Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, dated January 30, 2012 ("QBC 56.1 Stmt.") (Dckt. # 127-1).

1. Admitted only to the extent that KSI is in the business of selling "kosher food products at stadium and entertainment venues throughout the country." (QBC 56.1 Stmt. ¶ 2.)

2. Admitted only that QBC operates Citi Field, the home ballpark of the New York Mets. (QBC 56.1 Stmt. ¶ 1.)

3. Admitted in part; denied in part. Admitted only to the extent that KSI and QBC engaged in negotiations that led up to the agreement between QBC and KSI, dated January 23, 2008. Denied to the extent that the agreement does not discuss Katz's status as an independent vendor. (*See* Ex. 1; QBC's Ex. 4 at ¶ 4.)[2]

4. Admitted in part; denied in part. Admitted only that QBC's Director of Corporate Sales and Services Greg Stangel met with KSI's President Jonathan Katz and engaged in negotiations that led up to the agreement between QBC and KSI, dated January 23, 2008. QBC denies KSI's characterization of the substance of the negotiations. (QBC's Ex. 4 [Stangel Aff.] at ¶¶ 4, 5.)

5. Admitted in part; denied in part. Admitted that Greg Stangel sent an email to Jonathan Katz dated September 10, 2007. QBC denies KSI's characterization of the email and refers to the email for a true and accurate recitation of its terms. (Ex. 2.)

6. Admitted in part; denied in part. Admitted that QBC and KSI entered into an agreement dated January 23, 2008, and executed on January 31, 2008, which is a document that speaks for itself. QBC disputes the characterization of the agreement as a "Product Distribution Agreement" and denies KSI's statement to the extent the statement implies that QBC and KSI had reached agreement prior to January 23, 2008. (QBC 56.1 Stmt. ¶¶ 20, 27, 29.)

---

[2] Unless otherwise noted, "Ex. __" will refer to KSI's exhibits submitted in support of its Motion for Partial Summary Judgment dated January 30, 2012. (Dckt. #130.)

2

7. Admitted in part, denied in part. Admitted only to the extent that the excerpts quote portions of the referenced agreement, which is a document that speaks for itself. QBC disputes the characterization of the agreement as a "Product Distribution Agreement" and refers to the agreement for a true and accurate recitation of its terms. (Ex. 1.)

8. Admitted in part, denied in part. Admitted only to the extent that the excerpt quotes portions of the referenced agreement, which is a document that speaks for itself. QBC disputes the characterization of the agreement as a "Product Distribution Agreement" and refers to the agreement for a true and accurate recitation of its terms. (Ex. 1.)

9. Admitted in part, denied in part. Admitted that the agreement contemplates that KSI would enter into a separate operational agreement with Aramark. QBC disputes the characterization of the agreement as a "Product Distribution Agreement" and refers to the agreement for a true and accurate recitation of its terms. (Ex. 1.)

10. Admitted that the excerpt quotes a portion of the referenced agreement, except to dispute the characterization of the agreement as a "Product Distribution Agreement."

11. Admitted in part, denied in part. Admitted that the agreement contemplates that KSI would enter into a separate operational agreement with Aramark, and that KSI did enter into a Concession License Agreement with Aramark, dated January 1, 2009 ("Concession Agreement"), which agreement is a document that speaks for itself. QBC disputes KSI's characterization of the Concession License Agreement, and refers to the agreement for a true and accurate recitation of its terms. (Ex. 1; Ex. 4.)

12. Admitted in part, denied in part. Admitted only to the extent that the excerpt quotes portions of the referenced agreement, which is a document that speaks for itself. QBC

disputes the characterization of the agreement as a "Product Distribution Agreement" and refers to the agreement for a true and accurate recitation of its terms. (Ex. 1.)

13. Admitted only to the extent that QBC provided KSI with an "Activation Plan" which is a document that speaks for itself. QBC disputes KSI's characterization of the contents of the Activation Plan, and refers to the Activation Plan for a true and accurate recitation of its terms. (Ex. 21.)

14. Admitted only to the extent that KSI provided QBC with renderings of its Kosher carts in February 2009. (Exs. 6,7.)

15. Admitted in part, denied in part. Admitted only to the extent that Adam Barrick sent Jonathan Katz an email dated March 2, 2009, which email is speaks for itself. QBC disputes the characterization of the email and refers to the email for a true and accurate recitation of its terms. (Ex. 8.)

16. Admitted in part, denied in part. Admitted only that Pete Helfer sent an email to Jonathan Katz dated March 4, 2009, which email is a document that speaks for itself. QBC denies KSI's characterization of the email and refers to the email for a true and accurate recitation of its terms. (Ex. 9.)

17. Denied. (QBC's Ex. 2 [Katz Dep.] at 153:19-154:2, 172:15-22, 281:9-12; QBC's Ex. 1 [Hearing Tr. (Landeen)] at 159:6-12.)

18. Denied. (QBC's Ex. 5 at 13.; QBC's Ex. 15 at 84:25-85:15, 124:7-126:4, 126:12-25, 140:22-141:15; QBC's Ex. 1 at 250:21-251:7; August 25, 2010 Order (Dckt. # 21) at 1.)

19. Admitted only to the extent that KSI operated Sunday-Thursday during the 2009 season.

20. Admitted in part; denied in part. Admitted only to the extent that Adam Barrick sent an email to David Kestenbaum dated January 15, 2010, and Mike Landeen sent an email to Adam Barrick, Paul Schwartz and Paul Asencio dated January 15, 2010, which emails are documents that speak for themselves. QBC denies KSI's characterization of the emails and refers to the emails for a true and accurate recitation of their terms. (Exs. 12, 13.)

21. Admitted in part; denied in part. Admitted only to the extent that Adam Barrick sent an email to David Kestenbaum dated January 25, 2010, which email is a document that speaks for itself. QBC denies KSI's characterization of the email and refers to the email for a true and accurate recitation of its terms. (Ex. 14.)

22. Admitted in part; denied in part. Admitted only to the extent that Adam Barrick sent an email to David Kestenbaum dated February 22, 2010, which email is a document that speaks for itself. QBC denies KSI's characterization of the email and refers to the email for a true and accurate recitation of its terms. (Ex. 15.)

23. Admitted in part; denied in part. Admitted only to the extent that KSI's General Counsel sent a letter to James Denniston dated April 22, 2010, which letter is a document that speaks for itself. QBC denies the statements or positions asserted in the letter. (Ex. 16.)

24. Admitted, except to dispute the characterization of the agreement as a "Product Distribution Agreement."

25. QBC objects to paragraph 25 as an improper conclusion of law that need not be admitted nor denied.

Dated: New York, New York
February 14, 2012

                                      **HERRICK, FEINSTEIN LLP**

                            By:  /s/Avery S. Mehlman
                                Avery S. Mehlman, Esq.
                                Jonathan L. Adler, Esq.
                                2 Park Avenue
                                New York, New York  10016
                                (212) 592-1400

                            *Attorneys for Defendant Queens*
                            *Ballpark Company, LLC*